JOURNAL ENTRY and OPINION
{¶ 1} In 1995, the state of Ohio initiated the demolition of buildings and the environmental remediation of land on which stood the former General Motors Fisher Road/Coit Road body plant. As the demolition of the site commenced, residents of homes located near the site complained that vibrations from explosives and heavy trucks allegedly used in the demolition and carrying away of debris had caused structural damage to their houses. The residents brought suit alleging that the named defendants, all of whom were in someway connected with this stage of the project, were negligent and created a nuisance when removing debris from the site. The defendants collectively sought summary judgment on grounds that the residents had failed to prove that any of their claimed structural damage had been the result of vibrations from the demolition or removal of detritus. The court granted summary judgment and an appeal followed. A panel of this court dismissed the appeal for want of a final, appealable order because the motions for summary judgment, with the exception of defendant Dart Trucking, argued only that they are entitled to summary judgment on the negligence claim. The panel held that "[n]othing in any of [defendants'] motions could be construed as an argument entitling them to judgment in their favor on [the residents'] nuisance claim." See Morris v. State (Sept. 27, 2001), Cuyahoga App. No. 78864. On remand, the court granted summary judgment to all defendants on all remaining claims. This appealed followed.
 {¶ 2} We view the facts in a light most favorable to the residents, the nonmoving parties to the motion for summary judgment. See Civ.R. 56(C). The plaintiff-residents are the owners of thirteen houses located near the abandoned Fisher Body Plant on Cleveland's east side. We shall refer to the plaintiffs as the "residents" unless otherwise noted. General Motors operated the plant for over sixty years until 1984. Throughout the life of the plant, a number of toxic chemicals were used, including solvents, acids, cyanides, polychlorinated biphenyls (PCB), and asbestos. Five underground storage tanks were used to store oil, gasoline and solvents. After General Motors stopped production at the plant, vandals spilled PCB oils while seeking transformer cores, while other vandals set asbestos-covered electrical conduits on fire.
 {¶ 3} The state of Ohio purchased the site with the intention of building a prison on the premises, but abandoned that plan after protests about the location. By December 1998, the state found a number of hazardous materials present at the site, and over one hundred drums of leaking, unidentified wastes. Some of the PCBs had migrated into the sewer system, presenting a substantial threat to the public safety.
 {¶ 4} In 1995, the state entered into a contract with defendant Metcalf Eddy as the general contractor for the demolition of buildings on the site and the removal of hazardous dirt and debris. Metcalf Eddy then entered into several subcontracting agreements for the work to be performed at the site. Defendant Thompson Ground Development was to separate and remove non-hazardous debris from the site. Defendant Dart Trucking Company, Inc. was to haul material from the site. Defendant Cook Paving Construction Company was to do demolition and site leveling. Laidlaw Waste Systems, Inc. was hired to remove and transport hazardous PCB waste. Finally, defendant General Construction, Inc. was hired for demolition and debris removal, but subcontracted the job to BB Wrecking and Excavating, Inc., which was not named as a party to this action.
 {¶ 5} The residents alleged in their complaint that vibrations resulting from the explosive devices used to demolish the buildings began to degrade the foundations and walls of their houses. In addition, the residents alleged that trucks used to haul contaminated soils from the site were overloaded and driven at such high speeds that the vibrations from the trucks caused "reactionary cracks, fissures, and shifts in plaintiffs' home foundations, structures, driveways, walls, windows, and numerous other such damages." Included in the complaint were specific allegations of damages caused to individual residents.
 {¶ 6} The complaint set forth two causes of action. The first cause of action asserted negligence in the use of explosives and trucks. The second cause of action asserted a claim of negligent infliction of emotional distress based on the residents' prolonged exposure to the damage caused to their houses.
 I {¶ 7} Before addressing the arguments raised on appeal, we are compelled to note a procedural defect in the residents' brief. In this appeal, the residents initially filed separate briefs for each appellee. We struck those briefs and ordered the residents to file one brief. The refiled brief contains arguments relating to nuisance issues, and asks us to adopt and incorporate the arguments the residents made on the negligence issue in the briefs they filed in Case No. 78864 to "determine if those initial summary judgments regarding negligence were correct, or incorrect." (Emphasis sic.)
 {¶ 8} In State v. Bonnell (Oct. 5, 1987), Cuyahoga App. No. 55927, we addressed a very similar issue when a capital case defendant who had been limited to an eighty-five page brief asked us to refer to an appendix of the argument for a "complete discussion" of the error. Noting that the appendix included verbatim portions of material edited from the stricken merit brief, we criticized the "backdoor" attempt to enlarge the merit brief and chose to disregard any legal argument contained in the appendices that should have been included in the merit brief.
 {¶ 9} Our order limiting the residents to a single brief to cover all issues against all defendants necessarily meant that the merit brief in this case must cover all issues to be raised in this appeal. Because the appeal in Case No. 78864 was dismissed for want of a final, appealable order, all of the issues raised in that appeal had to be raised again in the merit brief for this appeal. The residents' attempt to incorporate the arguments made in the brief submitted in Case No. 78864 is nothing more than a backdoor attempt to enlarge the page limitations of Loc.R. 16(A) of the Eighth Appellate District. Despite our inclination to exclude from this appeal any and all issues relating to negligence, we have nevertheless concluded that the residents' merit brief arguably does address some negligence issues, however tangentially. Only those issues will be addressed. Negligence issues raised in this initial appeal and not repeated in the briefs currently before us will be disregarded.
 II {¶ 10} The arguments in support of summary judgment on the negligence claim were virtually identical among the several defendants, as were the residents' arguments in opposition. In essence, the motions collectively asserted that the residents had no proof, other than their self-serving beliefs, that any of the claimed structural damages were caused by activities relating to the demolition and remediation of the Fisher Road site. The defendants argued that no explosives whatsoever were used at the site, and they submitted the reports of engineers and vibration experts who said that the structural defects in the residents' houses preexisted the work at the plant and in any event, none of the trucks could have created sufficient sound vibrations to cause the type of damage claimed. The residents presented no experts on the issue of proximate cause, but they did submit their own affidavits to the effect that the damages were caused by tremors from trucks loaded with debris or explosions, or both.
 A {¶ 11} It is an elementary principle of tort law that a negligence claim must establish the (1) existence of a duty; (2) breach of that duty; (3) proximate cause between the breach and some damage to the plaintiff; and (4) damage to the plaintiff. The primary issue in this appeal is whether the residents provided sufficient evidence to create a question of fact on the issue of causation.
 {¶ 12} Aside from their affidavits, which we will discuss shortly, the residents offered a single affidavit from one George Simon. Although the facts are not entirely clear from the record, the residents are entitled to the inference that Simon had been hired by an insurance company to examine a house owned by plaintiff-resident Camilla Kennerly, determine whether the claimed damages were covered under the policy, and give an estimate of damages. Simon's letter, dated November 8, 1997, stated:
 {¶ 13} "As requested, please find enclosed our estimate regarding the damage at the above address. I inspected the above loss on Wednesday November 5th, 1997. It's this contractors [sic.] opinion that existing damage was caused by unnatural energy from numerous concussions and external forces. By homeowner description, demolition of the adjacent commercial building was beening [sic.] performed and explosives were used. Mrs. Kennerly states "that during this demolition her dwelling and light fixtures were shaking terribly."
 {¶ 14} In a separate affidavit, Simon listed his credentials as "over thirteen years in the insurance restoration business and having worked many claims during this period of time has given his opinion to several insurance companies and adjusters as well as clients."
 {¶ 15} On September 28, 2000, defendant Laidlaw filed a motion to exclude Simon from testifying at trial on grounds that the submission of the report had been made beyond firm deadlines established by the court and that Simon was unqualified to give an opinion. At a pretrial conducted by the court on October 2, 2000, it appears that the remaining defendants voiced objections similar to those made by Laidlaw. On October 3, 2000, the court issued a journal entry which stated, "s wish to respond to defects in contractor's opinion because s argue contractor does not qualify as an expert. Ct. directed s to file motion in limine." The remaining defendants filed motions relating to Simon's report and qualifications. The court then issued an order stating, "s motion to exclude testimony of George A. Simon — filed 9-28-00 — is granted."
 {¶ 16} The residents argue that the court erred by granting the motion to exclude Simon's opinion, but argue that in any event the court's order of exclusion applies only to defendant Laidlaw, the party referenced by the court's specific decision to grant the motion filed on November 28, 2000. In support of the latter argument that the order of exclusion applies only to Laidlaw, the residents cite to the following statement in Morris v. State, in which the panel stated, "[m]oreover, several appellees attempted to exclude the testimony of George Simon, a potential witness for appellants. It appears from the record, however, that the only appellee successful in excluding such testimony was Laidlaw as the trial court's order only references the motion filed by that appellee."
 {¶ 17} Because the panel dismissed the appeal for want of a final, appealable order, any statements it made that went beyond the confines of an analysis of jurisdiction were dicta and not binding on us or any other court. In any appeal, a court of appeals, like any other court, has authority to consider its own jurisdiction. State ex rel.Pearson v. Moore (1990), 48 Ohio St.3d 37. Once the panel determined that it lacked jurisdiction over the appeal because the trial court did not issue a final, appealable order, this court's jurisdiction to consider any other aspect of the trial court's order ended. Moreover, the panel did not purport to address the issue in any detail, as apparent by its use of the word "appears" when discussing the record. Any statements it made in noting the state of the record could not be considered authoritative in a way that would be binding on subsequent panels.
 {¶ 18} Our review of the relevant orders convinces us that the court intended to exclude Simon's affidavit as to all defendants. It is important that the issue had been raised in a pretrial, in which the court noted that "s" had raised the issue of Simon's qualifications as an expert. By using the plural abbreviation for defendants, the court must have intended that all defendants were objecting. This is consistent with the court's later directive that "s" file a motion in limine, again using the plural abbreviation and fully implying that the order applied to all defendants. Although the court's order granting the motion in limine specified a date that corresponded to the date on which Laidlaw filed its motion, it would be nonsensical for us to assume that the court only intended to grant Laidlaw's motion. All of the motions in limine were virtually identical in content and filed at the court's directive. It would make no sense for the court to purport to grant only Laidlaw's motion in limine to the exclusion of other identical motions. We find that the court intended to grant the motion in limine as to all defendants.
 {¶ 19} This brings us to the merits of the motion in limine. InState v. Grubb (1986), 28 Ohio St.3d 199, 201, the Ohio Supreme Court stated:
 {¶ 20} "* * * a motion in limine is a precautionary request, directed to the inherent discretion of the trial judge, to limit the examination of witnesses by opposing counsel in a specified area until its admissibility is determined by the court outside the presence of the jury. The power to grant the motion is not conferred by rule or statute, but instead lies within the inherent power and discretion of a trial court to control its proceedings." (Emphasis sic.) (Citations and internal quotation omitted.) We cannot disturb the court's ruling on a motion in limine unless that ruling constitutes an abuse of discretion.Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 157.
 {¶ 21} The court's decision to exclude Simon's testimony can be upheld on the basis that the residents failed to establish Simon's credentials as an expert in the cause of foundation disrepair. Evid.R. 702 provides that a witness may testify as an expert if the following three conditions are met: (1) he or she is qualified as an expert based on specialized knowledge, skill, experience, training or education regarding the testimony; (2) the testimony relates to matters beyond the knowledge of lay persons; and (3) the testimony is based upon reliable scientific, technical or other specialized information. In other words, an expert witness is someone who testifies concerning "* * * matters of scientific, mechanical, professional or other like nature, requiring special study, experience or observation not within the common knowledge of laymen * * *." See McKay Machine Co. v. Rodman (1967), 11 Ohio St.2d 77, paragraph one of the syllabus. "The individual offered as an expert need not have complete knowledge of the field in question as long as the knowledge she possesses will aid the trier-of-fact in performing its fact-finding function." State v. Baston (1999) 85 Ohio St.3d 418, 423, citing State v. D'Ambrosio (1993), 67 Ohio St.3d 185.
 {¶ 22} Simon's affidavit said nothing more about his credentials other than that he had been in the "insurance restoration business" for thirteen years and "has given his expert opinion to several insurance companies and adjusters as well as clients." There was no resume or list of past jobs included with the affidavit. It did not detail the specific type of home restoration work that he performed, nor did the affidavit give any indication of how much of that work he actually performed. While Simon may have averred that he gave expert opinions for previous clients, the complete absence of a work history makes that claim self-aggrandizing, to say the least.
 {¶ 23} But even if Simon had established his expertise to form an opinion as the cause of foundation disrepair, the fact remains that he only viewed one house — that of resident Camilla Kennerly. In Statev. Solomon (1991), 59 Ohio St.3d 124, the Ohio Supreme Court discussed the requirements of Evid.R. 703 and said:
 {¶ 24} "Accordingly, we find that where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied. It is important to note that Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions or facts or data admitted in evidence."
 {¶ 25} Nothing in Simon's affidavit showed that he actually perceived the facts necessary and relevant to forming an opinion as to the cause of foundation damage claimed by the residents other than Kennerly. He thus failed to perceive all the facts necessary to make an informed opinion as to houses other than that owned by Kennerly. Assuming for the moment that he was qualified to render an opinion on the cause of the damage to the house, an opinion as to the cause of the damage to the Kennerly house cannot be used as proof that the conditions that caused Kennerly's damages were the same as those claimed by the remaining residents. It was incumbent upon Simon to examine all of the houses alleged to have been damaged by the demolition of the Fisher Road plant before he could competently give an opinion as to proximate cause.
 {¶ 26} Finally, Simon's opinion of the cause of damage to the Kennerly house was based primarily on Kennerly's claim that "explosives" were used in the demolition. Simon took no steps to confirm independently Kennerly's claim that explosives had been used. Moreover, Simon's opinion made no connection between the alleged use of explosives and the "shaking" that Kennerly claimed to have experienced.
 {¶ 27} For all of the above reasons, the court did not abuse its discretion by granting the motion in limine and excluding Simon's opinion.
 B {¶ 28} To support their motions for summary judgment, the defendants collectively submitted opinions from three experts. The first expert, professional engineer Gregory Chacos, said that the houses in question were all between forty and eighty years old, with the majority being older rather than newer. After examining all of the houses, Chacos found that the structural complaints were due to a "pattern of deterioration that is caused by a long-term lack of maintenance and not by events related to demolition of an industrial facility a substantial distance away. To support this conclusion, Chacos noted that demolition of the kind performed at the Fisher Road plant was routinely accomplished without causing damage to nearby structures. Chacos found that some of the cracks claimed to have been caused by the demolition had paint in them that predated the demolition work. Some joints in the basement walls showed the presence of white deposits on the mortar joints that indicated long, slow leakage over a period of many years, not the short interval between demolition and inspection. Finally, Chacos noted that damage of this kind claimed by the residents would undoubtedly have caused windows to break, yet none of the residents made any claims to that effect.
 {¶ 29} The second expert, Edward Walter, a commercial seismologist and acoustical consultant, examined the houses to determine and evaluate the possibility that explosives had been used during the demolition of the Fisher Road site. He found that the closest minimum distance of any one of the residents' houses to the plant was in excess of two hundred feet. Based on the type of damage claimed by the residents, Walter concluded that it would take a "substantial amount of vibration or airblast to cause the type of alleged damage in question." After reviewing the types of vibrations needed to cause the damage claimed by the residents, Walter found that the claimed damage was "not consistent with explosive or mechanical demolition or trucking operations." Walter also concluded that had explosives been used as alleged by the residents, he would have expected that every window directly facing the site would have been broken, yet none of the residents claimed that windows were broken. Although Walter conceded that the residents would have felt vibrations from some of the demolition operations, the vibration levels were at a structurally safe level. A third expert, structural engineer Ronald Mancini, examined the houses and concluded that the structural damage claimed by the residents was a result of the age of the houses combined with poor maintenance. He found that some of the houses lacked appropriate backfill against the foundations, some had complete lack of maintenance for drains and downspouts, while others had broken perimeter drains which resulted in water undermining the footings and causing settling. Mancini concluded that none of the defects were the result of the demolition activities occurring at the site.
 C {¶ 30} With Simon's opinion inadmissible for purposes of the summary judgment motions, the only evidence the residents could rely on to establish proximate cause was their claim that the vibrations from the trucks and explosives caused their foundation damages. They claim that the explosions and rumblings from passing trucks loaded with debris from the demolition caused the structural damage to their houses.
 {¶ 31} In their initial opposition to the various motions for summary judgment, the resident filed what can best be described as form affidavits. These affidavits contained blank spaces for the residents to fill in with descriptions of the damages they suffered and repair estimates. Sixteen of the affidavits contained the following language, which we have set forth in blank:
 {¶ 32} "_______ is the owner of real property at _______ East 139th St. Cleveland, Ohio; that she has lived in said property from _____ until _____; Affiant further says that in the years of _______ felt tremors that shook the house when large trucks sped by to the Coit Road site on the streets of ________ and leaving the site with huge loads of debris; that some of the trucks were _____ and large dumpsters; that when the trucks came by pictures rattled on the wall and fell to the floor. and [sic.] many trucks traveled at night; that there was no lettering on the cabin [sic.] that would identify the name of the truck company.
 {¶ 33} "Affiant further says that there were loud explosions from the site that felt like earthquakes or bombs that shook the house; that the tremors continued from _____ until about _____ that the damages to the property from the tremors caused damages to my property in the amount of ______ and described as follows _____. Affiant further says that the damages to my property did not occur prior to the demolition at the Coit Road site and not before _____."
 {¶ 34} On remand, the residents submitted new affidavits. These affidavits once again relied on the residents' memory of vibrations and tremors coming from the site, caused by moving trucks and explosions. A new feature to the affidavits were statements concerning the mental well-being of the residents and how they lived with fear and anxiety from the demolition. Once again, the residents did not submit any expert evidence.
 D {¶ 35} We agree with the residents that an expert opinion is not necessary in cases where the matters in controversy are not beyond the knowledge of ordinary persons. See Evid.R. 702. However, the matters in controversy were beyond the knowledge of ordinary persons, as proven by the expert reports submitted by defendants. Those reports contained opinions on subjects varying from structural engineering to sonic seismology. At least one of the experts said that the residents would have felt vibrations from the trucks, but that those vibrations were not enough to cause the types of damages claimed in the complaint. And the residents did nothing to counter expert opinion that there should have been additional damages like broken windows had the tremors been sufficient to cause structural damage as claimed by the residents.
 {¶ 36} When a party has submitted expert testimony in support of a motion for summary judgment, the party opposing summary judgment cannot rely on the pleadings, but must come forward with additional evidence to counter that offered in support of the motion. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The residents did nothing to counter the expert opinion contained in the motions for summary judgment. Instead, they relied upon their pleadings, and when they did submit evidence it went to issues that were irrelevant; for example, claiming that damage estimates constituted proof of causation.
 {¶ 37} Taking the residents at their word as we must for purposes of reviewing a summary judgment, we credit their claims that they felt vibrations and tremors from passing trucks, but find the residents presented no evidence to counter the expert opinion that those tremors were not sufficiently strong to cause the types of structural damage shown in their houses. By standing solely on their perceptions that the tremors caused the damage, they failed to come forward with the kind of evidence necessary to rebut the defendants. The issue of proximate causation was one that was beyond the reach of laypersons, as demonstrated by the expert opinions offered by the defendants. Particularly to the point is the evidence offered by the seismologist, which showed that the vibration levels could not have caused damage to the foundations of the houses without also causing damage to windows. Importantly, the seismologist noted that the residents would have felt some vibrations, but those vibrations were not enough to cause foundations to buckle.
 {¶ 38} As for the explosions, we find there is no evidence, aside from the claims of various residents, to show that any explosives were used on the site. Defendants persuasively argued that any kind of blasting would have required a permit, and that the residents failed to show the existence of any permits for blasting. The residents could only claim that a lack of permits for blasting merely showed that the defendants had been conducting their blasting covertly and illegally.
 {¶ 39} Although we must give the residents the benefit of all favorable inferences, it would be unreasonable to infer that defendants engaged in demolition blasting without obtaining the necessary permits. If blasting had occurred, some evidence aside from the perceptions of the residents must have been available. The residents cited to no police reports or violations of safety laws. They offered no affidavits of non-party homeowners. It is inconceivable that explosive demolition work could have been conducted at the Fisher Road site and these residents were the only ones who heard the blasting. We cannot find an issue of material fact on nothing more than the unsubstantiated statements of the residents. To do otherwise would be to force the defendants to prove a negative — that they did not use explosives in the demolition.
 {¶ 40} Because the residents failed to present affirmative proof of causation in opposition to the motion for summary judgment, they could not, as a matter of law establish the elements of a negligence claim. For this reason, the court did not err by granting summary judgment on the negligence claims as to all defendants.
 III {¶ 41} The remaining issues were brought out in the supplemental motions for summary judgment after remand and include nuisance, gross negligence and severe emotional distress.
 A {¶ 42} The complaint alleged that the constant rumbling of trucks and the blasting for demolition constituted a nuisance. There are two types of nuisance: an absolute nuisance (nuisance per se) or as a qualified nuisance. Taylor v. Cincinnati (1944), 143 Ohio St. 426, paragraphs two and three of the syllabus. An absolute nuisance features a wrongful act that is either intentional or unlawful and strict liability attaches notwithstanding the absence of fault because of the hazards involved. A qualified nuisance involves a lawful act done carelessly or negligently so as to create a potential and unreasonable risk of harm which results in injury to another and hinges upon proof of negligence. See Cincinnati v. Baretta U.S.A. Corp., 95 Ohio St.3d 416,2002-Ohio-2480, fn. 4.
 {¶ 43} The residents correctly argue that the use of explosives would constitute negligence per se. In Walczesky v. Howitz (1971),26 Ohio St.2d 146, paragraph one of the syllabus states:
 {¶ 44} "Where explosives are used in such proximity to adjoining property that, regardless of the care used, the natural or probable result of the force of the explosion will damage a landowner's property the user of such explosives is liable for the damages proximately resulting therefrom irrespective of whether the user of the explosives was negligent in conducting the blasting operation. (Louden v. Cincinnati,90 Ohio St. 144, 106 N.E. 970, approved and followed.)"
 {¶ 45} However, as our discussion in Part II made clear, the residents failed to submit evidence to rebut defendants' denials about the use of explosives. Moreover, the residents failed to establish that the damage to their house was the natural and probable consequence of blasting, even if blasting had occurred. The court did not err by granting summary judgment on the nuisance claim.
 IV {¶ 46} The residents' final argument is that the court erred by granting summary judgment on the intentional infliction of emotional distress claims. Although the court did not specify any grounds for granting summary judgment, the defendants collectively argued that the residents failed to present sufficient evidence to show that they suffered serious emotional injury. The residents argue that the covert actions of the defendants constitute outrageous conduct.
 {¶ 47} A claim for relief asserting intentional infliction of emotional distress where there is no contemporaneous physical injury, the plaintiff must show that the tortfeasor intentionally or recklessly caused severe emotional distress through extreme and outrageous conduct. Yeagerv. Local Union 20 (1983), 6 Ohio St.3d 369, 374.
 {¶ 48} If we assume without deciding that the residents have alleged conduct that could be characterized as intentional for purposes of defeating a summary judgment motion, we nonetheless find that the residents could not prevail as they did not allege or prove the kind of emotional injury which could be described as serious. When emotional distress is unaccompanied by physical injury, the resulting psychic injury must be "severe and debilitating." Paugh v. Hanks (1983),6 Ohio St.3d 72, paragraph 3 of the syllabus.
 {¶ 49} The residents' affidavits simply said that they had worried or lost sleep as a result of the demolition activities occurring at the Fisher Road site. None of the residents submitted medical documentation to support these claims. But even had they been able to document sleeplessness and nervousness, those conditions would not be considered, as a matter of law, to be severe and debilitating. See Knief v. Minnich
(1995), 103 Ohio App.3d 103, 108 (no evidence sufficient to support a claim of intentional infliction of emotional distress where plaintiffs failed to seek medical or psychological treatment or counsel in order to cope with their frustration and did not allege their frustration was severe or debilitating); Borowski v. State Chemical Mfg. Co. (1994),97 Ohio App.3d 635, 644 (no evidence of serious emotional distress where no evidence of any changes in appellant's emotional condition was presented). Because there was a total absence of any evidence to show severe emotional injury, the court did not err by granting summary judgment on the emotional distress claims.
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J., and ANN DYKE, J., CONCUR.