ALEXANDER, APPELLEE, *v.* MT. CARMEL MEDICAL CENTER
ET AL., APPELLANTS.

(No. 77-1351—Decided December 6, 1978.)

*Weiner & Lippe Co., L. P. A., Mr. Jerry Weiner* and *Ms. Andrea R. Yagoda,* for appellee.

*Messrs. Knepper, White, Arter & Hadden, Mr. Richard A. Frye* and *Mr. Richard L. Miller,* for appellants.

LOCHER, J. Appellants essentially contend that the Court of Appeals' reversal of the trial court, which was premised upon the finding that plaintiff's medical expert, a podiatrist, was qualified to testify concerning the alleged malpractice by orthopedic surgeons, was erroneous. In their first proposition of law, appellants set forth the generally accepted rule that the competency of an expert witness is a matter within the sound discretion of the trial court, and a court's ruling thereon will not be reversed unless there is a clear showing of an abuse of this discretion. *Ohio Turnpike Commission* v. *Ellis* (1955), 164 Ohio St. 377. Relying on their previous iteration of the excerpted testimony of plaintiff's expert pertaining to his qualifications, appellants infer in their second proposition of law that the trial court did not abuse its discretion because the record contains some evidence demonstrative of the witness' lack of qualification. Upon a perusal of the record, we are constrained to disagree. The trial court's exclusion of the expert testimony of plaintiff's witness was clearly erroneous and constituted reversible error.

Appellants' arguments supporting the exclusion of the expert testimony of Dr. Cohen are that this cause concerns the practice of orthopedic surgery; that Dr. Cohen never performed an open reduction and internal fixation of a fractured ankle; and that as a podiatrist he is precluded by law from performing this procedure.[1] However,

---

[1] The only evidence of the rationale for the exclusion of the expert testimony of Dr. Cohen are the following two responses of the trial court to plaintiff's inquiries subsequent to the sustaining of defendants' objections:

"You have not established that he does the same thing as a physi-

plaintiff did not offer, at trial, any evidence of negligence on the part of the defendants with respect to the open reduction and internal fixation of her fractured ankle. Instead, she attempted to establish the defendants' negligence and the causal relationship of the ulceration with the application of and the failure to remove a cast which was too tight. The excluded testimony (as proffered) of her expert, Dr. Cohen, accordingly, was limited to the issues concerning the application of and failure to remove the cast.

Clearly, the application and removal of a cast are not procedures limited to orthopedic surgeons. See *Steinberg* v. *Indemnity Ins. Co. of North America* (C. A. 5, 1966), 364 F. 2d 266 (general practitioner permitted to testify concerning the application of half-casts which were too tight in a postoperative procedure by plastic surgeons). Dr. Cohen testified that in his practice as a podiatrist he has, on a number of occasions, applied a cast to the ankle and that he was specifically instructed in podiatry school as to the method of application. Indeed, as noted by the Court of Appeals in its opinion, the record contains evidence that the application and removal of a cast is a mere mechanical act often performed by technicians. It is thus readily apparent that in this area, *i. e.*, the application and removal of a cast, the fields of medicine overlap. Where, as here, the fields of medicine overlap and more than one type of specialist may perform the treatment, a witness may qualify as an expert even though he does not practice the same specialty as the defendant. See *Steinberg, supra; Simpson* v. *Glenn* (Tex. Civ. App. 1976),

---

cian, and when we say 'Physician,' I presume we mean either a Medical Doctor or a Doctor of Osteopathy."

"You have not qualified him to do anything. He says, yes, he is a surgeon, but that does not qualify him to testify. You got to qualify him as to whether or not he can perform an open or closed reduction; whether he has the right legally or otherwise to perform anything on somebody's ankle, but none of that has come into testimony. So far he's only qualified by his own statements to remove corns and that sort of thing from the bottom of the foot."

537 S. W. 2d 114 (general surgeon qualified to testify in malpractice action against a specialist in obstetrics and gynecology where the particular subject of inquiry is common to and equally developed in all fields of practice); *Sanzari* v. *Rosenfeld* (1961), 34 N. J. 128, 167 A. 2d 625 (physician who specialized in dental anesthesiology was competent to testify in a malpractice action against a dentist, where the standard of care in administering an anesthetic is common to both the medical and dental professions); *Katsetos* v. *Nolan* (1976), 170 Conn. 637, 368 A. 2d 172 (since the minimum care and treatment of shock was common to all medical specialties, plaintiff's expert witness did not need to be of the same specialty as the defendant); *Harris* v. *Smith* (C. A. 8, 1967), 372 F. 2d 806 (general practitioner qualified to testify in a malpractice action against an orthepedic surgeon where the patient subsequently had his arm amputated because of the onset of gas gangrene).

It is a general rule that the expert witness is not required to be the best witness on the subject. 2 Wigmore on Evidence 665, Section 569 (3d Ed. 1940). The test is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth. *Faukner* v. *Pezeshki* (1975), 44 Ohio App. 2d 186, 193.

The arguments that Dr. Cohen is not an orthopedic surgeon and that he has not performed, and may not legally perform, an open reduction and internal fixation are not controlling upon the issue under inquiry, *i. e.*, the application of and the failure to remove a cast which was too tight.

What thus remains is to focus upon Dr. Cohen's qualification as an expert witness. Any question pertaining to Dr. Cohen's knowledge and familiarity as a podiatrist with casts previously has been resolved by our prior notation of his testimony concerning his formal training and his actual clinical experiences in the application of casts and their ancillary care. This court must now determine whether plaintiff's expert was qualified to testify concern-

ing the standard of care that should be exercised by an orthopedic surgeon with respect to the application and removal of casts which are too tight. *Bruni* v. *Tatsumi* (1976), 46 Ohio St. 2d 127. Ohio case law reveals the adoption of the generally accepted rule that the witness must demonstrate a knowledge of the standards of the school and specialty, if any, of the defendant physician which is sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and, or, specialty if it differs from that of the defendant. See *Willett* v. *Rowekamp* (1938), 134 Ohio St. 285; *Bruni* v. *Tatsumi, supra.* Thus, it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications.

The application and removal of casts are not the exclusive domain of orthopedic surgeons. It is an area where the various fields of medicine overlap and apparently is viewed as a mere mechanical act often performed by technicians. Moreover, Dr. Cohen testified that there was a common way all surgeons applied casts and that the principles used in applying the plaintiff's cast were the same as he had been taught. The record, therefore, contains probative evidence that there exists a minimum standard of care common to all specialties with regard to the application of casts. Under these circumstances we are constrained to concur with the salient statement voiced by the majority below.

"* * * Unless it be demonstrated that the standard of care of an orthopedic surgeon in this regard is lower than that which would ordinarily be exercised by a podiatrist, Dr. Cohen's testimony is admissible since it lies within that area of medicine which he is authorized to and does practice.'"

---

[2]The practice of podiatry in Ohio is limited by statutory definition. R. C. 4731.51 provides:

"The practice of podiatry consists of the medical, mechanical, and surgical treatment of ailments of the foot, the muscles and tendons

Finally, we note that the General Assembly's recent promulgation, R. C. 2743.43, which delineates those competent to give expert testimony on liability issues in a medical claim, is in no manner supportive of the exclusion of plaintiff's expert witness. R. C. 2743.43 provides:

"(A) No person shall be deemed competent to give expert testimony on the liability issues in a medical claim, as defined in division (D)(3) of section 2305.11 of the Revised Code, unless:

"(1) Such person is licensed to practice medicine and surgery, osteopathic medicine and surgery, or *podiatric medicine and surgery by the state medical board* or by the licensing authority of any state;

"(2) Such person devotes three-fourths of his professional time to the active clinical practice of medicine or surgery, osteopathic medicine and surgery, or podiatric medicine and surgery, or to its instruction in an accredited university.

"(B) Nothing in division (A) of this section shall be construed to limit the power of the trial court to adjudge the testimony of any expert witness incompetent on any other ground." (Emphasis added.)

The statute thus clearly permits a licensed podiatrist to give expert testimony if otherwise adjudged competent. There is no question that the plaintiff's expert witness, Dr. Cohen, being licensed to practice podiatric medicine or surgery, meets the requirements imposed by R. C. 2743.43

of the leg governing the functions of the foot; and superficial lesions of the hand other than those associated with trauma. Podiatrists are permitted the use of such preparations, medicines, and drugs as may be necessary for the treatment of such ailments. The podiatrist may treat the local manifestations of systemic diseases as they appear in the hand and foot, but the patient shall be concurrently referred to a doctor of medicine or a doctor of osteopathic medicine and surgery for the treatment of the systemic disease itself. General anesthetics may be used under this section only in colleges of podiatry approved by the medical board pursuant to section 4731.53 of the Revised Code and in hospitals approved by the joint commission on the accreditation of hospitals, or the American osteopathic association. The use of x-ray or radium for therapeutic purposes is not permitted."

162

(A)(1). Appellants additionally claim that the evidence fails to establish Dr. Cohen's compliance with the require-ment of R. C. 2743.43(A)(2). The only evidence in the record is that Dr. Cohen is in the active clinical practice of podiatric medicine and surgery. Any evidence that he expends any of his professional time in any other man-ner is absent from the record. Moreover, the issue of com-pliance with R. C. 2743.43(A)(2) was never specifically raised. Thus, the exclusion of Dr. Cohen's testimony is not mandated by R. C. 2743.43.

A medical malpractice case is generally "one of the classic examples of the *necessity* of expert opinion testi-mony as to the utimate issue." (Emphasis *sic.*) *Steinberg* v. *Indemnity Ins. Co. of North America, supra* (364 F. 2d 266, 274). The cause under consideration is no exception to this general rule. Plaintiff's failure in the trial court was directly predicated upon the exclusion of the expert testimony of Dr. Cohen. After a perusal of the facts con-tained in the record we find that there was no legal basis for the exclusion of his expert testimony. It only can be inferred from the record that Dr. Cohen's expert testimony was excluded because he was a podiatrist, not an orthopedic surgeon, and was thus precluded from performing the open reduction and internal fixation. These factors in no way show that Dr. Cohen did not have the requisite know-ledge and experience to express an opinion on the subject of this malpractice action, *i. e.,* the application of and the failure to remove a cast which was too tight. Plaintiff was entitled to place in evidence the expert testimony of Dr. Cohen. Apart from plainly effecting an obvious injustice upon the plaintiff, the decision was clearly erroneous in that it was a misapplication of the law to the facts of the case and thus constituted an abuse of discretion.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, W. BROWN and SWEENEY, JJ., concur.
LEACH, C. J., HERBERT and P. BROWN, JJ., dissent.

LEACH, C. J., dissenting. The majority opinion, in holding that the trial court abused its discretion in excluding the opinion testimony of Dr. Cohen, concludes that "the application and removal of a cast are not procedures limited to orthopedic surgeons"; "that the application and removal of a cast is a mere mechanical act * * *"; and that there is "a common way all surgeons appl[y] casts" which was known to Dr. Cohen and thus "a minimum standard of care common to all specialties with regard to the application of casts."

In so concluding the majority, in effect, holds that one cast is just like any other cast, and that the medical necessity dictating that the cast not be removed during a particular span of time is irrelevent; just so long as the patient at some time after its application says that it is "too tight."

When the testimony (including the proffer) of Dr. Cohen is carefully examined, it clearly appears that he did not even attempt to profess expertise involving the orthopedic question of when an ankle and leg cast, placed to immobilize the area to accomplish the knitting of the bones following an open reduction and internal fixation by the use of screws and wires, could or should be removed. Nor did Dr. Cohen actually assert any knowledge of the key question as to the standard of care involved in such a medical decision; nor the deviation by any of the defendants from such standard.

Although reference is made in the majority opinion to the violation of a "minimum standard of care" in the *application* of the cast, a study of the record and of Dr. Cohen's testimony demonstrates that no evidence of any type, character or description was adduced even hinting at any such departure from such standard in the *application* of the cast.

The claim actually made was that the cast should have been removed sooner than it was since at the time plaintiff saw Dr. Cohen in late July 1974, plaintiff "felt that it was tight" and that although "[t]here was no way for me to tell if it was tight * * * I felt there was a good chance that it could have been tight"; and that Dr.

Cohen follows the practice of *always removing* a cast when one of his patients *complains* that it is *too tight*. Despite the fact that he is "[n]ot really" "familiar with open reduction and internal fixation of an ankle," is not "familiar with the techniques of doing the open reduction and internal fixation," has had "no clinical experience" in this field, and as a podiatrist is limited in surgery to "muscles and tendons of the leg governing the functions of the foot" but *not* including the *bones*, the majority concludes that the trial court abused its discretion in excluding the proffered testimony of Dr. Cohen that plaintiff suffered injury as "a direct result of a tight cast." Irrespective of whether, under other fact patterns, a podiatrist might be qualified to express an opinion as to the violation of the standard of care by an orthopedic surgeon, the testimony of Dr. Cohen, in my opinion, falls far, far short of establishing qualifications to express the proffered opinion herein. I dissent.

HERBERT and P. BROWN, JJ., concur in the foregoing dissenting opinion.