OPINION
Plaintiff-appellant, Michael Construction Company ("Michael"), appeals from the judgment of the Portage County Court of Common Pleas awarding it a net award of $4,460 in its claim for breach of contract and for money on account filed against defendant-appellee, Rootstown Water Service Company ("Rootstown Water Service").
On July 7, 1997, Michael and Rootstown Water Service entered into a contract for the installation of a forty-three hundred-foot water supply line along Lynn Road in Rootstown Township. The contract incorporated the Portage County specifications known as the Green Book. The Green Book requires the surface area to be restored to as good as or better condition than pre-installation. Rootstown Water Service retained eight percent of the contract price to ensure Michael would return to complete any unfinished work or to repair problems. The Green Book provides that the contractor is to call for final inspection when it feels the work is entirely complete. The contract provided for a one-year guarantee period, beginning when the project received final acceptance.
Michael began work on July 14, 1997. Susan Genet ("Genet"), an inspector for Portage County, was at the site for part of the project but became ill before Michael completed work at the site. Genet prepares a punch list after the project is done which shows everything remaining to be done to complete the job. Usually the punch list is comprised of restoration work. Genet averred she did not have a chance to inspect the finished grading and final landscaping. The punch list for this project was prepared by Genet on August 18, 1998. Genet admitted Michael was not notified about any problems with restoration within one year of Michael leaving the job site. Genet stated final inspection was not done to her knowledge.
Michael substantially performed its obligations under the contract by August 8, 1997, and left the work site. Michael submitted what it considered to be its final estimate on August 14, 1997. The invoice does not indicate it is a final bill or final estimate.
Rootstown Water Service believed it never finally accepted the entire project but partial acceptance had taken place when the line was put into service after bacteria and pressure tests were performed. Rootstown Water Service received complaints from residents about the condition of their yards and driveways. A second ditch appeared on Lynn Drive directly over the water line. The ditch was a result of settlement. The ground can take from six months to a year to settle. There were substantial areas lacking vegetation or where the vegetation was sparse. Prior to the installation, the land had a single drainage ditch bordered by thick vegetation.
On August 15, 1997, Drago Plumbing and Water Service ("Drago") was attempting to tap into the water line when the water line cracked. Drago repaired the break. Late on August 17, 1997, the water line broke again, approximately a few hundred yards from where the first break occurred. A large pool of water flooded the street. Water to the line was turned off at approximately 1:30 a.m. on August 18, 1997. A construction engineer with the Portage County Water Resources Department was contacted in the morning. The engineer was asked to contact Michael about the water line break. Drago was called the morning of August 18, 1997, to repair the break if Michael could not be contacted. Butch McIntyre, Michael's supervisor, stated he was not contacted until that afternoon although Rootstown Water Service had an emergency phone number to call. Michael could not respond to the site at the time because of its involvement in another project. Drago went ahead with the repair work. The pipe had a twelve to fourteen-foot split in it. Drago discovered the pipe had broken in two upon its removal. Michael was never notified of the first break.
On February 2, 1998, Michael filed a complaint for breach of contract and for money on account. On March 31, 1998, Rootstown Water Service counterclaimed breach of warranty for the loss of water and repairs caused by the two water line breaks. On September 21, 1998, Rootstown Water Service amended its counterclaim with leave of court to add a claim for breach of contract with regard to the landscaping. On April 19, 1999, a hearing was held before a magistrate. On September 24, 1999, the magistrate issued its decision and journal entry. The magistrate found Michael carried its burden on proving entitlement to judgment against Rootstown Water Service for $20,049. The magistrate also found in favor of Rootstown Water Service on its counterclaim and off set $15,589 from Michael's judgment. Michael was granted a total net judgment of $4,460. On February 24, 2000, the magistrate filed findings of fact and conclusions of law. On May 15, 2000, the trial court overruled Michael's objections and adopted the magistrate's decision and judgment entry. Michael has timely appealed from this decision.
Michael assigns the following errors for review:
 "1. The Trial Court erred in excluding the expert testimony of Butch McIntyre.
 "2. The Trial Court erred by failing to properly interpret the contract's one year guarantee period.
 "3. The Trial Court erred by relying upon testimony not made from personal knowledge in finding that Michael Construction did not perform the restoration in a workmanlike manner."
 In its first assignment of error, Michael contends the trial court abused its discretion by excluding the expert testimony of Butch McIntyre. Michael sought to prove Drago caused the second water line break by failing to bleed the line during the first repair. Michael argues McIntyre was qualified to give expert testimony in the case. The magistrate did not believe McIntyre was qualified as an expert witness to be able to render an opinion as to why the second break occurred.
Evid.R. 702 provides a witness may testify as an expert if the testimony relates to matters beyond the knowledge and experience of most people; the witness has specialized knowledge, skill, experience, training, or education regarding the subject matter at issue; and the testimony is based upon reliable technical or other specialized information. See Nichols v. Hansel (1996), 110 Ohio App.3d 591, 597. The decision to admit or exclude expert opinion testimony is entrusted to the discretion of the trial court. That decision will not be disturbed upon appeal unless the trial court abuses its discretion. Wrightman v.Consolidated Rail Corp. (1999), 86 Ohio St.3d 431, 437. An abuse of discretion connotes more than a mere error of law; rather, it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable.AAAA Enterprises, Inc. v. River Place Community Urban RedevelopmentCorp. (1990), 50 Ohio St.3d 157.
The expert must demonstrate some knowledge on the particular subject superior to that possessed by the average person. Scott v. Yates
(1994), 71 Ohio St.3d 219. The qualification of an expert depends upon the expert's possession of special knowledge that he or she has acquired either by study of recognized authorities on the subject or by practical experience that he or she can impart to the trier of fact which will assist it in understanding a pertinent matter. State Auto Mut. Ins. Co.v. Chrysler Corp. (1973), 36 Ohio St.2d 151, 160. The expert need not be the best witness on the subject, but his or her testimony must assist the trier of fact in the search for the truth. Alexander v. Mt. Carmel Med.Ctr. (1978), 56 Ohio St.2d 155. Further, the facts or data upon which the expert bases his or her opinion must be those perceived by him or admitted into evidence at the hearing. Evid.R. 703.
Butch McIntyre was the superintendent in charge of underground construction for Michael. McIntyre oversees the installation of all water and sewer lines for the company. McIntyre has been involved in the installation of water and sewer lines for thirty years. McIntyre attended various seminars over the years and was an Engineering Aide IV. McIntyre oversaw the Lynn Road project. McIntyre testified he spent three to four days bleeding the Lynn Road water line following its installation. McIntyre stated that a pressure test could not be done if the line was not bled first. If the pressure builds up in a line, the line possibly could break. McIntyre had never seen a pipe crack from being under too much pressure. McIntyre stated that after a break is repaired, the line should be bled. The process would take eight to ten hours for a twelve hundred-foot section.
Plaintiff's counsel asked McIntyre to assume Anthony Drago cracked the water line while trying to install a tap, repaired the break, and turned the water on that same day. Drago was called to repair the second break on August 17, 1997, where a piece of the pipe had broken away from the rest of the pipe. Michael's attorney asked McIntyre, based upon his years of experience, if he had an opinion as to the cause of the second break. The magistrate stated McIntyre had not been qualified as a witness to answer the hypothetical question. Plaintiff's counsel later proffered that McIntyre would have given his opinion the August 17, 1997 break occurred because of undue pressure built up in the water line as a result of Drago's failure to bleed the pipe after the first break.
Although McIntyre has years of experience installing water lines, he stated he had never seen a pipe break because the water line was not properly bled. He also stated it was possible that a water line could break from the build-up of pressure. McIntyre has no specialized knowledge or training regarding breaks caused by pressure. The trial court did not abuse its discretion by determining McIntyre was not qualified to render an opinion on this particular issue. Michael's first assignment of error is overruled.
In its second assignment of error, Michael argues the trial court improperly interpreted the contract's one-year guarantee period. Michael maintains it submitted the final bill and received final approval over one year before receiving any complaints from Rootstown Water Service about problems or deficiencies. Michael submits that the magistrate's finding that Rootstown Water Service accepted the project in writing before the project received final approval was contrary to the terms of the contract. Michael argues the contract does not require acceptance from Rootstown Water Service but from Portage County. It is Michael's position that the water line could not be put into service until the project received final acceptance. Because the water line was in service, final acceptance of the work took place, beginning the one-year acceptance period provided for under the contract. Michael claims the acceptance period expired before it received notice of any complaints regarding the restoration of the site or the occurrence of the second water line break.
The construction and interpretation of contracts are matters of law.Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214. An appellate court applies a de novo review of questions of law and may interpret the language of the contract substituting its interpretation for that of the trial court. Children's Med. Ctr. v. Ward (1993),87 Ohio App.3d 504, 508. However, a reviewing court will not substitute its judgment for that of the trial court regarding findings of fact if those findings are supported by competent, credible evidence. C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279.
The contract provides that the county engineer will inspect the project when the contractor feels the work has been entirely completed. If items remain to be completed or remedied, the contractor is to perform the work immediately upon being notified by the engineer. After the items are corrected, final inspection will be made. The work must pass final inspection before the county will accept it. A final estimate is to be issued following acceptance of the work by the county. Any final estimate must be approved by the engineer before payment is made. The date of approval of the final estimate by the engineer is the date of acceptance of the project. A guarantee period of one year extends from the date of the acceptance of the work. Use of completed or substantially completed portions of the work does not constitute acceptance of that work.
Under the contract, use of the water line is not final acceptance of the project. Michael is correct in stating that the contract does not provide for written acceptance from Rootstown Water Service. However, the Green Book, which was incorporated into the parties' contract, provides that the county engineer must inspect the work after the contractor feels the project is complete. There is no evidence this ever took place. The county inspector testified that final acceptance never took place. Neither is there any evidence the bill Michael asserts was its final estimate received approval by the engineer. Therefore, the magistrate correctly determined final acceptance did not take place and the one-year guarantee period had not yet begun. Michael's second assignment of error is not well taken.
In its third assignment of error, Michael asserts the trial court erred by relying upon the testimony of Gary Tersigni ("Tersigni") that Michael did not perform the restoration of the property in a workmanlike manner. Michael argues that Tersigni did not view the land before the water line project and had no personal knowledge of whether the property was in better or worse condition after completion of the project. Michael contends Tersigni lacked the evidentiary foundation required for him to give an opinion of Michael's restoration work and the cost of any repairs.
Evid.R. 703 provides that the facts or data upon which the expert bases his or her opinion must be either perceived by the expert or be admitted in evidence at the hearing. See State v. Chapin (1981), 67 Ohio St.2d 437, paragraph two of the syllabus. Evid.R. 705 allows an expert to render an opinion or inference if he or she discloses the underlying facts or data upon which the opinion or inference is based. The disclosure may be in response to a hypothetical question. Both Evid.R. 703 and Evid.R 705 require that a proper factual foundation be laid before an expert may render an opinion. Patrick v. Painesville Commercial Properties, Inc. (1997), 123 Ohio App.3d 575.
Michael contends Tersigni never saw Lynn Road before installation of the water line. Michael argues Tersigni could not render an opinion about whether it performed the restoration in a workmanlike manner because he had no knowledge of the condition of the land before Michael completed its restoration work. Michael asserts it only had the duty to restore the land to a condition similar to its prior condition. Michael maintains Tersigni's testimony should have been excluded based upon his lack of personal knowledge of the area's pre-installation condition.
Tersigni testified he viewed Lynn Road upon Rootstown Water Service's request in order to give a price for the restoration of back slopes, ditches, and front residential lawns. Tersigni went to Lynn Road in 1998, after Michael installed the water line. Tersigni observed two ditches on the site for approximately fifteen hundred feet. One was a typical profile ditch used for water run-off. Tersigni recognized the second ditch as being caused from settlement. The valve boxes indicated to Tersigni the location of the water line. The second ditch was along the water line. The second ditch would not drain into the profile ditch, causing the water to remain on the property. The settlement ditch was approximately one foot in depth. Tersigni attributed the second ditch to settlement and not to a pre-existing condition of the site because of a difference in the grade of the land. Tersigni opined the job needed some repair and touch up to be acceptable under the Green Book. Tersigni noted that the lawn where the installation took place differed from the existing lawn. The installation area had sparse grass. Tersigni saw settlement in some of the driveways on Lynn Road.
Tersigni testified regarding the reasons why he thought the site needed additional work. His believed the conditions on Lynn Road were caused by settlement. The valve boxes, as well as his experience in the field, permitted Tersigni to ascertain the location of the water line. The second ditch and the water line were in the same location. Tersigni acknowledged he did not know the condition of the land before Michael began its work, but felt he could estimate the cost of restoration based upon his view of the site and his experience. Tersigni was qualified to render an opinion regarding the cost of restoring the property.
The testimony of other witnesses bolstered Tersigni's opinion. The witnesses testified about the condition of the property on Lynn Road prior to the installation of the water line. The magistrate viewed a videotape of the area taken prior to Michael beginning work on the water line. Ample evidence was admitted at the hearing regarding the condition of the land before the water line was installed. Michael's third assignment of error is overruled.
For the reasons stated, the assignments of error are without merit and the judgment of the trial court is affirmed.
 _________________________________________ JUDGE DIANE V. GRENDELL
FORD, P.J., NADER, J., concur.