OPINION
{¶ 1} Appellant, Earl S. Casterline ("Casterline"), appeals from the decision of the Trumbull County Common Pleas Court, which granted summary judgment in favor of appellee, Dr. Ronald Khoury, on Casterline's medical malpractice claim. We reverse.
 {¶ 2} On November 26, 1996, Dr. Khoury performed surgery on Casterline to repair a ventral hernia. Following surgery, Casterline's vocal cords were paralyzed. This necessitated Casterline's use of a tracheostomy.
 {¶ 3} Casterline filed a medical malpractice action against Dr. Khoury and Trumbull Memorial Hospital. The trial court granted summary judgment in favor of the hospital. Casterline dismissed his action against Dr. Khoury without prejudice and prosecuted an appeal to this court. We affirmed the trial court's grant of summary judgment in favor of the hospital in Casterline v. Trumbull Memorial Hosp., Trumbull App. No. 2000-T-0120, 2001-Ohio-8727.
 {¶ 4} Casterline then re-filed his action against Dr. Khoury. Casterline alleged that his vocal cords were injured as a result of a previous neck surgery. Casterline alleged that Dr. Khoury failed to conduct a proper preoperative evaluation of Casterline's vocal cords and that, had he done so, he would have discovered the vocal cord damage. Casterline's expert, Dr. John Bogdasarian, opined that as a result of the intubation for the hernia surgery, Casterline suffered vocal cord paralysis. Dr. Bogdasarian opined that Dr. Khoury should have discovered the vocal cord damage during his preoperative evaluation, and that his failure to do so fell below the standard of care.
 {¶ 5} Dr. Khoury moved for summary judgment arguing that Casterline had failed to present appropriate expert testimony to establish that Dr. Khoury's conduct fell below the appropriate standard of care. Dr. Khoury's motion challenged only Dr. Bogdasarian's qualifications to render expert testimony in this case. Specifically, Dr. Khoury, a general surgeon, argued that Dr. Bogdasarian, an otolaryngologist, was not qualified to render an expert opinion as to the appropriate standard of care for a general surgeon. The trial court granted Dr. Khoury's motion for summary judgment. Casterline appeals asserting one assignment of error: "The trial court erred to the prejudice of the plaintiff/appellant by granting defendant/appellee's motion for summary judgment."
 {¶ 6} We review a grant of summary judgment de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Thus, we review the trial court's grant of summary judgment independently and without deference to its determination. Lexford Prop. Mgmt., L.L.C. v. Lexford Prop. Mgmt., Inc. (2001), 147 Ohio App.3d 312, 316.
 {¶ 7} Summary judgment is proper when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion is made, that conclusion is adverse to that party. Harless v. Willis Day Warehousing, Inc. (1978), 54 Ohio St.2d 64, 66.
 {¶ 8} "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis of the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. If the moving party has satisfied this initial burden, the nonmoving party has a reciprocal burden under Civ.R. 56(E) to set forth facts showing that there is a genuine issue for trial. Id. at 293.
 {¶ 9} "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things.
 {¶ 10} "The standard of care for a physician or surgeon in the practice of a board certified medical or surgical specialty should be that of a reasonable specialist practicing medicine or surgery in that same specialty in the light of present day scientific knowledge in that specialty field; therefore, geographical considerations or circumstances control neither the standard of the specialist's care nor the competence of the testimony of an expert in that specialty." Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, paragraphs one and two of the syllabus.
 {¶ 11} Thus, a plaintiff in a medical malpractice action has the burden of presenting expert testimony to establish that the defendant's conduct fell below the acceptable standard of care.
 {¶ 12} Evid.R. 702 provides in relevant part:
 {¶ 13} "A witness may testify as an expert if all of the following apply:
 {¶ 14} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 15} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 16} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *."
 {¶ 17} As set forth in Hudson v. Arias (1995), 106 Ohio App.3d 724, the general rule for expert medical witnesses is that:
 {¶ 18} "the witness must demonstrate a knowledge of the standards of the school and specialty, if any, of the defendant physician which is sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and or specialty if it differs from that of the defendant." Id. at 729.
 {¶ 19} The expert witness need not be the best witness on the subject. Ishler v. Miller (1978), 56 Ohio St.2d 447, 453, citing Alexander v. Mt. Carmel Med. Ctr. (1978), 56 Ohio St.2d 155. The test is whether the witness will assist the trier of fact in the search for the truth. Id.
 {¶ 20} Finally:
 {¶ 21} "where the fields of medicine overlap, a witness from a school or specialty other than that of the defendant physician may qualify as an expert witness if he demonstrates sufficient knowledge of the standards of the defendant's school and specialty enabling him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards." Id.
 {¶ 22} In the instant case, Dr. Khoury contends that Dr. Bogdasarian was not qualified to render an opinion as to the appropriate standard of care because Dr. Bogdasarian was not board certified in general surgery, nor a general surgeon. Dr. Bogdasarian testified that he had once been board certified in general surgery but that he had not performed the type of surgery involved in this case since 1975.
 {¶ 23} Dr. Bogdasarian testified that he still performed head and neck surgery on a regular basis. Dr. Bogdasarian testified at deposition as follows:
 {¶ 24} "Q. Doctor, do you feel you're competent to testify as to the standard of care for a general surgeon?
 {¶ 25} "A. I think with respect to certain portions of the care that a general surgeon would give, I do feel that I can do that. Certainly I wouldn't want to testify as to the intricacies of each of the surgical procedures that a general surgeon might do at this time, but I think with regard to general patient care, preoperative evaluation, that is generally something that's common to most surgical specialties, and I believe I can testify to that portion of it."
 {¶ 26} Casterline did not identify Bogdasarian as an expert on hernia surgery; Dr. Bogdasarian was identified as an expert on preoperative evaluation and patient care. Dr. Bogdasarian testified that there was an overlap in these areas between his surgical specialty and Dr. Khoury's surgical specialty. Dr. Bogdasarian was qualified to render an expert medical opinion on these subjects. Thus, the trial court erred in granting Dr. Khoury's motion for summary judgment. See, generally, Ishler v. Miller (1978), 56 Ohio St.2d 447, 453 (allowing physician specializing in neurology and psychiatry to testify as to standard of care for orthopedic surgeon in unnecessary surgery case where the expert, "demonstrated a knowledge of the standards or procedures generally used by members of the defendant's profession in arriving at a decision to perform back surgery;) Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 157, (allowing a podiatrist to testify in case against orthopedic surgeon as to standard of care for applying and removing a cast;) Steele v. Buxton (1994), 93 Ohio App.3d 717, (expert sufficiently familiar with procedure where expert witness, a general practitioner who was licensed to practice medicine and surgery, testified that he had been trained in medical school on how to perform a herniorrhaphy and that he had assisted in the surgery, although he had never performed the surgery himself;) Berlinger v. Mt. Sinai Med. Ctr. (1990), 68 Ohio App.3d 830, (trial court erroneously instructed the jury that a medical expert must confine his opinion to matters within his specialty;) DiSilvestro v. Quinn, (Dec. 31, 1996), Lake App. No. 95-L-061, 1996 Ohio App.LEXIS 5950, (finding oncologist qualified to give opinion as to proximate cause and negligence relating to gynecologist's treatment of patient who ultimately was diagnosed with cervical cancer.)
 {¶ 27} Casterline's assignment of error has merit. The judgment of the Trumbull County Court of Common Pleas is reversed and this matter is remanded for proceedings consistent with this opinion.
Judith A. Christley and William M. O'Neill, JJ., concur.