[Cite as *Kuehnle v. Mercy Hosp. W. Hills*, 2011-Ohio-2357.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| THERESA KUEHNLE, | : | APPEAL NO. C-100400 |
| | | TRIAL NO. A-0807371 |
| Plaintiff-Appellant, | : | |
| | | *D E C I S I O N.* |
| vs. | : | |
| | | |
| MERCY HOSPITAL WESTERN HILLS, | : | |
| and | : | |
| JOHN DOES 1 through 25, | : | |
| Defendants-Appellees. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  May 18, 2011

*O'Connor, Acciani & Levy* and *Alissa J. Magenheim*, for Plaintiff-Appellant,

*Mannion & Gray, L.P.A.,* and *Judd R. Uhl*, for Defendants-Appellees.

Please note:  This case has been removed from the accelerated calendar.

**SUNDERMANN, Presiding Judge.**

{¶1}     Theresa Kuehnle appeals the trial court's entry of judgment in favor of Mercy Hospital Western Hills and John Does 1 through 25 ("Mercy Hospital").  Because we conclude that her assignments of error do not have merit, we affirm the judgment of the trial court.

{¶2}     In 2007, when she was a patient at Mercy Hospital, Kuehnle fell while being helped to the bathroom.  In her complaint against Mercy Hospital and various John Does, Kuehnle alleged that hospital employees had been negligent in their care and transport of Kuehnle, that the employees had breached their duty to provide adequate medical, nursing, and therapy care to Kuehnle, and that the hospital was liable under a theory of respondeat superior.

{¶3}     Kuehnle alleged that she had been admitted to the hospital for treatment of pain caused by broken ribs that she had sustained in a fall.  According to Kuehnle, after she had been in the hospital for a few days, a physical therapist named Ginger Jones had come to her room to assess her for physical therapy.  While Jones was in her room, Kuehnle had to use the toilet.  Kuehnle alleged that Jones alone had helped her to the bathroom, despite notes in Kuehnle's chart that she was a "two-person assist." Kuehnle alleged that Jones had used a gait belt improperly during the move, that Jones had stepped away from her during the move, and that Kuehnle had fallen during the move to the bathroom.  Kuehnle was injured in the fall.

{¶4}     The case was tried before a jury.  During the trial, Kuehnle called Dr. Stephen Payne.  Payne testified that he was board-certified in internal medicine and that, in the course of his practice, he had performed strength assessments on patients and had made decisions about how to ambulate patients safely.  Payne testified as an

expert about the treatment that Kuehnle had received while at the hospital, about various notes in Kuehnle's chart concerning her strength and mobility, and about the injuries that Kuehnle had sustained in the fall at the hospital. He also testified about his understanding of how Jones had tried to assist Kuehnle to the bathroom. On cross-examination, Payne stated that he could not testify about the standard of care for physical therapists. Nor could he testify about whether Jones's actions had fallen below a physical therapist's standard of care.

{¶5} Clarissa Millner, Kuehnle's daughter, testified about her understanding about what had happened and about her mother's subsequent pain and suffering. But because she did not witness the fall, Millner was not able to state how the fall had occurred.

{¶6} Kuehnle's next witness was Donna Hunter, a registered nurse. Hunter testified that she had assessed patients' risks for falling. According to Hunter, the purpose of a fall-risk assessment done by a nurse was the same as the purpose of one done by a physical therapist. Hunter testified that her understanding was that Kuehnle had said that Jones had stepped away from her during transport. Hunter testified about what a nurse's standard of care would be for the assessment and movement of a patient in Kuehnle's condition.

{¶7} When Hunter was asked about whether Jones's actions had fallen below a standard of care, the hospital challenged Hunter's competency to testify about the standard of care applicable to physical therapists. The court permitted a voir dire of Hunter out of the hearing of the jury to establish whether Hunter was competent to testify about the standard of care for physical therapists. Following the voir dire, the trial court decided that Hunter was not competent to testify about the standard of care

for physical therapists. Based on its decision, the trial court told the parties that it would instruct the jury to disregard Hunter's testimony.

{¶8} After the court indicated that it would strike Hunter's testimony, Kuehnle's counsel told the court that he did not intend to call further experts on the issues of causation and standard of care. When Kuehnle's attorney suggested that the hospital would likely move for a directed verdict on the issue of standard of care, the court said, "No, I don't want to hear that now. Not unless you want me to hear it now." The court then asked Kuehnle's counsel if, in light of the court's ruling on Hunter's testimony, he wanted a recess for the day before presenting another witness. The attorneys and the court then had an off-the-record discussion.

{¶9} After the off-the-record discussion, the court went back on the record and said, "Counsels, we had a conversation in the back. And I've had some thoughts of what counsel has—what we discussed, and I think your suggestion would perhaps be the best one at this particular time. Instead of going forward with all the testimony that you have, you might proceed directly to a motion at this particular point in time. And that way to save the rest of the witnesses from coming in." The hospital then moved for a directed verdict, arguing that because Kuehnle had not presented expert testimony about the issue of a physical therapist's standard of care, she could not make a prima facie case of malpractice. The trial court granted the motion. The court entered a judgment for Mercy Hospital dismissing Kuehnle's case in its entirety.

{¶10} In her first assignment of error, Kuehnle now asserts that the trial court erred when it excluded the testimony of Hunter. "[T]he competency of an expert witness is a matter within the sound discretion of the trial court, and a court's ruling

thereon will not be reversed unless there is a clear showing of an abuse of discretion."[1] Kuehnle contends that the trial court abused its discretion when it excluded Hunter's testimony because Hunter satisfied the requirements for the admissibility of expert testimony found in Evid.R. 702.

{¶11}    Evid.R. 702 provides that "[a] witness may testify as an expert if * * * (A) [t]he witness's testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons[,] * * * [and] [t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."   While Hunter may have been qualified to testify as an expert about the specialized skill involved in a nurse's assessment of a patient's strength and mobility, Kuehnle did not present evidence that Hunter was qualified to testify with respect to the standard of care attributable to physical therapists.

{¶12}    "Ohio case law reveals the adoption of the generally accepted rule that the witness must demonstrate a knowledge of the standard of the school and specialty, if any, of the defendant * * * which is sufficient to enable [her] to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness'[s] school and, or, specialty if it differs from that of the defendant."[2]   During voir dire, Hunter was able to testify only that she had been in training with other physical therapists and had acted as a supervisor of groups of people that included physical therapists, and that nurses and physical therapists performed strength assessments for similar purposes.  She could not state that the standards of care for a nurse and for a physical therapist in performing strength assessments and

---

[1] *Alexander v. Mt. Carmel Med. Ctr.* (1978), 56 Ohio St.2d 155, 383 N.E.2d 564, citing *Ohio Turnpike Comm. v. Ellis* (1955), 164 Ohio St. 377, 131 N.E.2d 397.
[2] Id. at 160.

ambulating patients were the same. We conclude that the trial court did not abuse its discretion when it excluded Hunter's expert testimony with respect to whether Jones's actions in assessing and ambulating Kuehnle fell below the standard of care for physical therapists. The first assignment of error is overruled.

{¶13} In her second assignment of error, Kuehnle asserts that the trial court erred when it granted a directed verdict for Mercy Hospital. With Hunter's testimony stricken, there was no expert testimony about a physical therapist's standard of care in doing assessments. A directed verdict with respect to the malpractice claim was therefore proper.

{¶14} But Kuehnle contends that expert testimony was not required to establish ordinary negligence on the part of the hospital and its employees. During opening statement and Payne's testimony, Kuehnle suggested that Jones had stepped away from Kuehnle while helping her to the bathroom. Whether stepping away from a patient in Kuehnle's condition was negligent was within the ken of the jury.[3] But other than Payne and Millner testifying about their understanding about how Kuehnle's fall had happened, Kuehnle did not put on any direct evidence about the fall. After the trial court concluded that Hunter could not testify as an expert, it appears that Kuehnle's counsel decided not to have the remaining witnesses testify. There is no indication that the court in any way prevented the testimony of the remaining witnesses. Instead, the court offered counsel an opportunity to take a break to reevaluate his strategy. After an off-the-record discussion, counsel stated that he would not put on more witnesses. Absent the presentation of evidence of what had happened during the fall, Kuehnle's ordinary negligence and respondeat-superior claims were abandoned. The trial court

---

[3] See *Dimora v. Cleveland Clinic Found.* (1996), 114 Ohio App.3d 711, 683 N.E.1175; *Krafty v. Firelands Community Hosp.*, 6th Dist. No. E-07-019, 2007-Ohio-5302.

did not err in directing the verdict in favor of Mercy Hospital on those claims. The second assignment of error is overruled.

{¶15}    We therefore affirm the judgment of the trial court.

Judgment affirmed.

**HENDON** and **CUNNINGHAM, JJ.,** concur.

Please Note:

The court has recorded its own entry this date.