[**Cite as** *Scott v. Buckeye Physical Medicine & Rehab-Gahanna, L.L.C.*, 2022-Ohio-1866.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Brian Scott, on his own behalf and on behalf of his minor child, K.S., | : | |
| | : | No. 21AP-317 |
| Plaintiffs-Appellants, | | (C.P.C. No. 19CV-4198) |
| | : | |
| v. | | (REGULAR CALENDAR) |
| | : | |
| Buckeye Physical Medicine and Rehab – Gahanna, LLC et al., | : | |
| | | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 2, 2022

**On brief**: *Samuel H. Shamansky Co., L.P.A., Samuel H. Shamansky*, and *Donald L. Regensburger*, for appellants. **Agued**: *Donald L. Regensburger*.

**On brief**: *Reminger Co., L.P.A., David H. Krause*, and *Jackie M. Jewell*, for appellees Buckeye Physical Medicine Rehab-Gahanna, LLC and Cindy A. Sutantio, CNP. **Argued**: *Jackie M. Jewell*.

**On brief**: *Roetzel & Andress, LPA, Bradley L. Snyder*; *Emily K. Anglewicz*, for appellee Daniel W. Reed, D.C. **Argued**: *Emily K. Anglewicz*.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} This case arises from alleged chiropractic malpractice said to have occurred in February 2017. *See* Complaint at ¶ 11-21. As of May 2021, and although they'd had the relevant medical records since fall 2018, plaintiffs-appellants could not identify an expert who would testify to the breach of the relevant professional standard of care. The trial court

declined to delay matters further, and granted summary judgment for defendants-appellees on their formally unopposed motions based on the plaintiffs' failure to adduce evidence in support of an essential element of their case. The issue before us is whether the trial court abused its discretion in holding to the established litigation schedule. It didn't, and we therefore will affirm the trial court's judgment.

{¶ 2} In February 2018, plaintiff-appellant Brian Scott, on his own behalf and on behalf of his minor daughter K.S. (together, "the Scotts"), sued defendants-appellees Buckeye Physical Medicine and Rehab — Gahanna, LLC, chiropractor Daniel W. Reed, and nurse Cindy A. Sutantio, along with unspecified "Doe" defendants, for having negligently caused injury to K.S. *See* Complaint and May 14, 2021 Journal Entry Deciding Pending Motions ("Journal Entry") at 1. Mr. Scott voluntarily dismissed the case in May 2018, *see* Appellants' Brief at 6, fn. 1, but by October 30, 2018, all parties had the relevant medical records, *id*. at 7; Reply Brief at 4. Mr. Scott refiled the Complaint in May 2019. A case schedule was established and then modified more than once by agreement of the parties. Appellants' Brief at 6; *see also* Journal Entry at 1 (mentioning "two prior continuances of deadlines to disclose witnesses in this version of this case").

{¶ 3} The final case schedule – as established "[b]y [November] agreement of the parties" – set a date of January 15, 2021 for the "supplemental joint disclosure of all witnesses." December 9, 2020 Order. It also set a discovery cut-off date of March 1, 2021, to permit a dispositive motion date of March 19, 2021 and, if needed, a trial date of June 1, 2021. *Id*. On Friday, February 26, 2021, more than a month after the final witness disclosure deadline and two (weekend) days before the discovery cut-off date, the Scotts through counsel filed a "Motion to Amend Case Schedule." The motion stated that discovery responses from the defendants had not been provided until December of 2020, and argued that "these circumstances have substantially impaired Plaintiffs' ability to obtain informed expert review or meaningfully depose Defendants before the current deadlines." Motion at 2. Mr. Scott proposed a new dispositive motion cut-off date of June 1, 2021, to be followed by a discovery deadline of June 15, 2021. *Id*. at 3. The motion suggested no firm trial date, but "agree[d]" that "the proposed extension will necessitate a continuance of the trial date * * *." *Id*. at 2. It attached no evidentiary material.

{¶ 4}    The same day that the Scotts filed their motion, and "[p]urely by coincidence, * * * Buckeye Physical Medicine and their employee Nurse Sutantio filed a motion for summary judgment based upon lack of support for plaintiffs' claims from any expert witness.  Dr. Reed followed with his own motion for summary judgment on March 3." Journal Entry at 1.  Defendants-appellees also opposed the Scotts' postponement motion. The Scotts replied to that opposition (but not directly to the summary judgment motions) on March 8, 2021.  The 2018 disclosure of K.S.'s medical records, they observed, had not satisfied the defendants' obligation to provide other discovery responses, and "though Defendants now argue that Plaintiffs are prohibited from producing an expert, it is notable that no dispositive motions were filed [promptly] after the January 15, 2021 deadline passed."  March 8, 2021 Reply to Defendants' Memorandum in Opposition at 2 (further urging that no one would be prejudiced by further delay).  That Reply attached an affidavit from a lawyer for the Scotts attesting that they had not received full discovery responses until a little over two months earlier, in late December of 2020.  *Id.*

{¶ 5}    Beyond a stray reference or two to summary judgment in their Reply favoring case schedule amendment, the Scotts filed no other response to either summary judgment motion.

{¶ 6}    The trial court waited roughly two months before providing the parties Notice of a hearing on the postponement and summary judgment motions.  May 4, 2021 Notice. That Notice outlined the trial court's understanding that the Scotts were alleging that two shots administered to K.S. for back pain in early 2017 had caused her to suffer sciatica: In a nutshell, the complaint was that an inappropriate drug had been administered incorrectly, causing harm; that the chiropractor and the nurse were medically negligent; and that Buckeye Physical Medicine was responsible for their negligence under the doctrine of respondeat superior.  Notice at 1-2.  Such claims, the Notice explained, would require expert testimony with regard to the standard of care for the choice of the drug and the way it was given, as well as for proof of causation.  *Id.* at 2-3, citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976); *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155 (1978); *Woessner v. Toledo Hosp.*, 6th Dist. No. L-14-1260, 2016-Ohio-5764, ¶ 23-24; Evid.R. 601(E).  *See also, e.g., Chilton-Clark v. Fishel*, 10th Dist. No. 16AP-76, 2016-Ohio-7135, ¶ 17-19

(upholding summary judgment for defendant where expert necessary for plaintiff's case was not identified by discovery cut-off date).

{¶ 7}   But, cautioned, the trial court, "[a]lthough the [agreed] December 2020 Order required joint disclosure of 'all witnesses' no later than January 15, 2021, plaintiffs never identified any expert witnesses." Notice at 2. Buckeye Physical Medicine and nurse Sutantio had moved for summary judgment on February 26, 2021, the trial court noted, and it construed the Scotts' continuance request as a response. Dr. Reed had "filed his own motion for summary judgment on March 3," while opposing the proposed schedule amendment the next day: "All defendants point to the absence of any expert witness who will testify on the standard of care, proximate cause, or potentially any other issues requiring expert testimony to get the case to the jury." *Id*. "Plaintiffs again argued for more time [in their Reply] on March 8," the trial court continued. "Since then, nothing has been filed suggesting that plaintiffs have identified any expert witness who will arguably meet their burden of proof." *Id*. Having suggested in that way that it would have been open to identification of an expert even months after the disclosure deadline, the trial court scheduled a May 13, 2021 hearing on the postponement and summary judgment motions. *Id*. at 3.

{¶ 8}   Despite the elucidation provided by the trial court in its Notice, the Scotts did not identify any expert at the May 13 hearing either. The trial court began the hearing by inviting counsel for the Scotts to argue their motion to amend the case schedule, "since it doesn't seem as though there's anything much left for us to do if you don't have an expert * * * ." May 13, 2021 Tr. at 3. Counsel acknowledged that the Scotts' case required an expert and that they still didn't have one: "And if the court is not willing to give us the additional time to ensure that we have an expert, then we're basically dead in the water." *Id*. Discovery had lagged because of COVID-19, he said (although "[g]ranted, we did have plaintiff [K.S.'s] medical records from Buckeye Physical Medicine"). *Id*. at 4.

{¶ 9}   Responding to counsel's argument that further delay would not occasion prejudice, the trial court observed: "I've never seen a case where there wasn't at least some tentative expert at this point, or subject to tweaking his opinion because we got some late medical records, this is who our expert is and this is what their opinion is going to be. * * * * Meanwhile, these guys are waiting * * * for now, give or take, four years to get this thing

behind them." *Id.* at 7. The Scotts had not wanted to retain an expert without having all the information that might be needed, their lawyer said. And he confirmed the trial court's sense that they had no expert even "tentatively" lined up: "We do not have an expert at this time because we didn't know whether the court was going to grant us an extension. It doesn't make sense to spend thousand of dollars [sic] on an expert whose opinion isn't going to be coming in." *Id.* at 8.

{¶ 10} The following day – on May 14, 2021, four months after the witness disclosure date had passed (without a continuance motion by the deadline), two and a half months after the discovery cut-off date, two months after the dispositive motion deadline, two weeks before the scheduled trial date, and with the Scotts still not having identified the necessary expert witness(es) – the trial court issued its Journal Entry denying the Scotts' motion to modify the case schedule and granting the named defendants' motions for summary judgment. The trial court underscored that "[d]espite the [mutually acknowledged] requirement for expert testimony, plaintiffs have never identified a possible expert witness on any issue in this case." Journal Entry at 2. "It is undisputed that the complete chart from Buckeye Physical Medicine (which includes Dr. Reed's notes) was first produced to plaintiffs back in October 2018 * * * * That, coupled with simply having plaintiff K.S. give her own testimony about what happened during her treatment in 2017, would allow any prospective expert to get a good understanding of the key facts in this case. * * * * [But] [d]espite the passage of years, not even [as] much as a tentative or preliminary expert opinion has been offered. The only logical inference is that there simply is no doctor who can meet the requirements of Evid. R. 601(E) and R. 702 and potentially testify to opinions needed to get this case to a jury." *Id.* at 2. The trial court continued: "The substantive law demands expert testimony. * * * * Were there even an outside chance that plaintiffs could still produce an expert, the court might well grant more time. That apparently being impossible, the court may not simply ignore defendants' legitimate right to see an end to these allegations after three years." *Id.* at 2-3. On May 25, 2021, the trial court entered its Final Judgment dismissing the Scotts' case on the merits.

{¶ 11} Appealing now to us, the Scotts posit one assignment of error: "The trial court abused its discretion by denying appellants' request for a reasonable modification to

the case schedule to conduct additional discovery and to obtain an expert report after receiving delinquent discovery responses from appellees." Appellants' Brief at 4.

{¶ 12} The Scotts contend that the defense motions for summary judgment and the trial court's subsequent actions effectively converted the Scotts' motion to amend the case schedule into a Civil Rule 56(F) motion to continue summary judgment proceedings so as to permit further development of evidence. Appellants' Brief at 10. Even though the Scotts' postponement motion was filed *before* the summary judgment motions, and even though the Scotts' motion as filed February 26, 2021 did not, as Civil Rule 56(F) requires, state by affidavit the reasons they could not respond to summary judgment, it is true that their Reply in support of amending the schedule did bear an affidavit and that the trial court did view the Scotts' motion as having "responded" to a summary judgment filing. *See* Notice of Hearing at 2; *see also* August 3, 2021 Tr. at 4 (trial court states: "I'm not going to play games about who filed first"). The bottom line, however, is that the Scotts do not succeed in their appeal even should their motion be construed as having been advanced pursuant to Civil Rule 56(F).

{¶ 13} As the Scotts acknowledge, in the end "a trial court's determination of discovery issues will not be reversed absent an abuse of discretion * * * * [, and an] abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Appellants' Brief at 11, citing *Heimberger v. Zeal Hotel Group, Ltd.*, 10th Dist. No. 15AP-99, 2015-Ohio-3845 (which also in the context of Rule 56(F) notes, as do the Scotts, that " '[c]ourts have broad discretion over discovery matters,' " *id.* at ¶ 47, citations omitted). Here, the record reflects that the trial court was entirely reasonable and indeed went out of its way to explain the legal landscape when scheduling its motions hearing.

{¶ 14} Moreover, as we emphasized in *Heimberger*, " ' "[m]ere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment." ' " *Id.* at ¶ 49. (citations omitted). Here, not only had the Scotts had the relevant medical records for years, they also had the "full" discovery in December of 2020, roughly two months before they filed their motion to amend the schedule and roughly four and a half months before the motions hearing (at which they still could not hint at an expert).

Beyond all that, the Scotts themselves had agreed in November to the final scheduling order that the trial court adopted December 9, 2020 – in the very month that the Scotts received the balance of their discovery: They knew when they agreed to the order that not all the discovery was in, but committed to identifying all witnesses by January 15, 2021 and to the March 2021 discovery and dispositive motions cut-offs, and they provide no real argument as to why the discovery received in December 2020 would inform, for example, the standard of care issues evident since 2017.

{¶ 15} The Scotts' argument that "the trial court provides no explanation as to how an expert could even begin to opine as to [Buckeye Physical Medicine's] liability for its alleged failure to train, supervise, or discipline its employees in the absence of any records or testimony concerning those matters," Appellants' Brief at 13, only highlights the problems with their position: Any such derivative liability would depend on the Scotts establishing first that the doctor or nurse had breached the standard of care, causing harm to K.S.; such proof would require expert testimony; and the Scotts had been unable to come up with an expert who would testify to that effect. Without such an expert witness, no analysis of training by Buckeye Physical Medicine would be remotely relevant. The need for such testimony had been clear from the outset, and immediacy of the need was sharpened by the requirements of the agreed scheduling order, the motions for summary judgment, and the explicit Notice of the motions hearing.

{¶ 16} We further note that even outside of the Rule 56(F) context, "the decision to grant or deny a continuance lies within the sound discretion of the trial court." *Foley v. Foley*, 10th Dist. No. 05AP-242, 2006-Ohio-946, ¶ 15, citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981) (adding that "the decision of a trial court regarding a motion for a continuance will not be reversed on appeal unless the trial court has abused its discretion"). In the civil law context too, apart from the criminal due process concerns that weigh potential prejudice to a criminal defendant against a court's docket control and the public's interest in efficient justice, *see Unger* at 67, we have applied the *Unger* balancing test. *Foley* at ¶ 16, citing *Unger* at 67. Those factors include the length of the delay requested (here, a three-month delay of discovery and dispositive motion deadlines, with an indeterminate delay of the trial date); whether other continuances had been requested and received (here, yes, by mutual accord); inconvenience to litigants, witnesses, opposing counsel, and the court

(here, as the trial court noted, the defendants had these allegations hanging over them for some years); whether the requested delay is for legitimate reasons (here, an open question given the agreed schedule imposed in December 2020 and the passage of the January 15, 2021 witness identification date without any motion for extension or discovery enforcement); whether the movant contributed to the circumstances giving rise to the defense (arguably so, as just noted); and other relevant factors (including the period of time between the events in question and the Scotts' request for a continuance to try to find an expert, as well as the 2018 production of the medical records). *Compare Foley* at ¶ 16.

{¶ 17} Under any analysis and whether looking to Rule 56(F) or not, the trial court did not abuse its discretion by denying the Scotts' motion, made well after the witness disclosure date had passed, to give them more time to attempt to find an expert witness. In fact, the trial court held off on its hearing and decision until mid-May 2021, and even by that point – just two weeks or so before the proposed June 1, 2021 dispositive motion date that they had advocated in their motion – the Scotts still had not found an expert.

{¶ 18} We overrule the Scotts' single assignment of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and MENTEL, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned
to active duty under the authority of the Ohio Constitution,
Article IV, Section 6(C).

_____