OPINION
{¶ 1} Amber Klapka ("Klapka") appeals the August 1, 2002 judgment entry of the Lake County Court of Common Pleas denying her motion to suppress. Klapka also appeals the trial court's December 24, 2002 judgment entry accepting the jury's guilty verdict. For the reasons set forth below, we affirm the decision of the trial court in this matter.
 {¶ 2} In January 2002, Klapka was incarcerated in the Lake County Jail for attempted drug possession. During her incarceration, Klapka became acquainted with fellow inmate Melody Sparow-Phillips ("Sparow-Phillips"). A plan was devised to have heroin mailed to the jail inside a greeting card. At some point, Sparow-Phillips contacted Lieutenant Ronald Walters ("Lt. Walters") and informed him of the plan. Lt. Walters subsequently met with Sparow-Phillips, whereby it was decided that a friend of Sparow-Phillips, Gregory Gunn ("Gunn"), would help Joe Elsing ("Elsing"), a friend of Klapka, obtain the drugs that would ultimately be sent to Klapka as part of a "sting" operation.
 {¶ 3} Agent Michael Gardner ("Agent Gardner") of the Lake County Narcotics Agency ("LCNA") assisted in setting up a controlled buy of heroin. Gunn and Elsing purchased the heroin. Thereafter, Gunn gave Agent Gardner the greeting card containing four packets of heroin, which was prepared by Elsing and addressed to Klapka at the jail.
 {¶ 4} Lt. Walters had the envelope postmarked so that it appeared to have been mailed. On January 31, 2002, the envelope was delivered to Klapka in jail during the regular course of dispersing mail to the inmates. Sparow-Phillips was present when Klapka opened the envelope. Klapka removed the heroin, gave two packets to Sparow-Phillips while keeping the other two for herself.
 {¶ 5} Immediately thereafter, Lt. Walters and Detective Jeffrey Sherwood ("Det. Sherwood") confronted Klapka. At that time, Klapka maintained possession of the greeting card and the two packets of heroin.
 {¶ 6} After issuing Miranda warnings to Klapka, Lt. Walters and Det. Sherwood proceeded to interview Klapka. Klapka confessed, both orally and in writing, to contacting Elsing and arranging to have the heroin mailed to her inside the jail. Klapka acknowledged that the idea was hers and that Sparow-Phillips did not initiate the plan.
 {¶ 7} On April 17, 2002, Klapka was indicted on one count of complicity to the illegal conveyance of a drug of abuse onto the grounds of a detention facility, a felony of the third degree ("count one"), and one count of possession of heroin, a felony of the fifth degree ("count two"). Klapka pleaded not guilty to both counts.
 {¶ 8} On July 9, 2002, Klapka filed a motion to suppress her statements. The motion was heard on July 29, 2002. Det. Sherwood, Lt. Walters and Klapka testified at the suppression hearing. The trial court denied Klapka's motion on August 1, 2002.
 {¶ 9} A jury trial commenced on December 17, 2002. At the conclusion of the trial, the jury returned a guilty verdict on both counts. The trial court accepted the jury's verdict on December 24, 2002, and ordered a pre-sentence investigation.
 {¶ 10} On January 27, 2003, the trial court conducted a sentencing hearing. Klapka was sentenced to three years of community control, which included 180 days in jail, successful completion of the jail's drug treatment program, and, upon her release from jail, completion of the NEOCAP, another drug treatment program.
 {¶ 11} Klapka timely appealed and raised the following assignments of error:
 {¶ 12} "[1.] The trial court erred by failing to grant defense's motion to suppress her oral and written statements taken in violation of her Fifth, Sixth, and Fourteenth Amendments to the United States Constitution as well as Section 10, ArticleI of the Ohio Constitution.
 {¶ 13} "[2.] The trial court erred in failing to instruct the jury regarding the affirmative defense of entrapment, thereby depriving her of her right to a fair trial, to present a complete defense, and to due process of law as guaranteed by the Sixth andFourteenth Amendments to the United States Constitution and Ohio Constitution.
 {¶ 14} "[3.] The Appellant's conviction is against the manifest weight of the evidence as the state failed to prove beyond a reasonable doubt complicity to illegal conveyance of a drug of abuse in a detention center.
 {¶ 15} "[4.] The prosecutor's misconduct violated appellant's right to a fair trial guaranteed by the due process provisions of Article I, Section 16 of the Ohio Constitution and theFourteenth Amendment to the United States Constitution."
 {¶ 16} In her first assignment of error, Klapka argues that her motion to suppress should have been granted because she claims that she was under the influence of heroin at the time of the statement and that she was promised leniency in exchange for her cooperation. Klapka further argues that she was misled during the interview, specifically when she was told that Elsing's fingerprints were on the packets of heroin and that a drug sniffing dog detected the drugs in the envelope. Thus, Klapka argues that her statements were not voluntary in nature.
 {¶ 17} "[I]t is well-settled that the taking of an involuntary confession violates the Due Process Clause of theFourteenth Amendment. See, e.g., Spano v. New York (1959),360 U.S. 315 * * *. A coerced confession may also be found to violate the Fifth Amendment privilege against self-incrimination." Statev. Comstock (Apr. 15, 1997), 11th Dist. No. 96-A-0058, 1997 Ohio App. LEXIS 3670, at *7. "The question of voluntariness is a question of law, and as such, an appellate court must independently review the facts to arrive at its own conclusion as to whether a given confession was voluntary." Id. at *6-*7 (citations omitted). The state bears the burden of establishing the voluntariness of a confession by a preponderance of the evidence. Colorado v. Connelly (1986), 479 U.S. 157, 168-169.
 {¶ 18} "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus. A statement is voluntary "absent evidence that [the suspect's] will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v. Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus.
 {¶ 19} Although Klapka claims that she was under the influence of heroin at the time of the interview and was, therefore, not able to render a voluntary statement, the evidence indicates otherwise. Both Det. Sherwood and Lt. Walters testified at the suppression hearing that they did not notice any behavior that would indicate that Klapka was under the influence of any intoxicating substance. They testified that Klapka was coherent, attentive, responsive and fully oriented to her surroundings and the situation. Moreover, Klapka's clear memory of the interview, as expressed throughout her testimony at the suppression hearing, indicates that she was not under the influence.
 {¶ 20} Even if Klapka had ingested heroin prior to the interview, this, alone, would not render her statement involuntary. Since she exhibited no outward signs of intoxication and since she admits that she did not tell either Det. Sherwood or Lt. Walters that she had ingested the heroin, her purported ingestion of the heroin would not render her statement involuntary. See State v. Smith, 80 Ohio St.3d 89, 112,1997-Ohio-355 ("Intoxication affecting one's state of mind, absent coercive police activity, would be an insufficient reason to exclude [a] voluntary confession.").
 {¶ 21} Klapka's claim that she was promised leniency if she cooperated is also not supported by the evidence. Det. Sherwood and Lt. Walters denied making such a promise. They both explained that they never would have made such a promise because they knew that she had already failed at least one drug treatment program, which was the reason for her incarceration at the time of the sting. Moreover, offers of leniency do not render a statement involuntary. See Edwards, 49 Ohio St.2d at 41.
 {¶ 22} While the state acknowledges that Det. Sherwood and Lt. Walters misled Klapka by telling her that Elsing's fingerprints were on the heroin packets and that a drug sniffing dog discovered the heroin in the envelope, these misrepresentations do not render her statement involuntary. "The use of deceit is merely ` * * * a factor bearing on voluntariness.'" State v. Cooey (1989), 46 Ohio St.3d 20, 27
(citation omitted). In viewing the totality of the circumstances, these minor misrepresentations did not render Klapka's statement involuntary. See Frazier v. Cupp (1969), 394 U.S. 731, 737-739
(an officer's misrepresentation that another co-defendant had already confessed was "insufficient * * * to make this otherwise voluntary confession inadmissible"); see, also, State v. Wiles
(1991), 59 Ohio St.3d 71, 81 (an officer's misrepresentation that the defendant had already been implicated by another party did not render his statement involuntary).
 {¶ 23} In fact, viewing the totality of the circumstances, we conclude that Klapka's statement was voluntary in nature. Klapka is a twenty-two year old female with a high school education and some college experience. The single interview was no longer than 90 minutes and was conducted in an office at the Lake County Sheriff's Office. Klapka was properly Mirandized and waived her rights both orally and in writing. There were no claims or evidence of physical deprivation or mistreatment. Finally, Klapka was not threatened, nor was she induced, as discussed above, into making the statement. We, therefore, find that Klapka's will was not overborne by any police conduct and that Klapka's statement was voluntary. See Edwards, 49 Ohio St.2d at 41; Comstock,
1997 Ohio App. LEXIS 3670, at *9-*12.
 {¶ 24} For these reasons, Klapka's first assignment of error is without merit.
 {¶ 25} In her second assignment of error, Klapka argues that she was entitled to a jury instruction on the issue of entrapment. Klapka asserts that the evidence sets forth the essential elements of entrapment and, thus, the trial court erred in not granting her request for such an instruction.
 {¶ 26} Crim.R. 30(A) requires a trial court to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharged its duty as the fact finder." State v. Comen (1990),50 Ohio St.3d 206, paragraph two of the syllabus. A trial court's decision to give or not to give a requested jury instruction regarding a controverted fact or issue will not be overturned absent an abuse of discretion. See State v. Lessin, 67 Ohio St.3d 487, 494,1993-Ohio-52; State v. Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 27} An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams
(1980), 62 Ohio St.2d 151, 157 (citation omitted). Reversalunder an abuse of discretion standard is appropriate only if theabuse of discretion renders "the result * * * palpably andgrossly violative of fact and logic [so] that it evidences notthe exercise of will but perversity of will, not the exercise ofjudgment but defiance thereof, not the exercise of reason butrather of passion or bias." State v. Jenkins (1984),15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 28} "Entrapment is an affirmative defense under R.C.2901.05(C)(2)." State v. Doran (1983), 5 Ohio St.3d 187, paragraph two of the syllabus. As such, the defendant bears the burden of establishing entrapment by a preponderance of the evidence. R.C. 2901.05(A).
 {¶ 29} In Ohio, entrapment is defined under the subjective test, Doran, 5 Ohio St.3d at 191, which "focuses upon the predisposition of the accused to commit an offense." Id. at 190. "[E]ntrapment is established where the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order to prosecute." Id. at paragraph one of the syllabus. "However, entrapment is not established when government officials `merely afford opportunities or facilities for the commission of the offense' and it is shown that the accused was predisposed to commit the offense." Id. at 192, quoting Sherman v. United States (1958),356 U.S. 369, 372. The defense of entrapment is available when the government acts, under a prearranged agreement, through an "active government informer," whether paid or not. Sherman,356 U.S. at 373-374.
 {¶ 30} In this case, although Sparow-Phillips had been an informant with the LCNA in the past, when she initiated contact with the Sheriff's Office, she was not an informant with the Sheriff's Office, which initiated the sting operation. Moreover, the evidence indicates that Klapka provided the impetus for obtaining the heroin and having it mailed to the jail. Sparow-Phillips testified that Klapka devised the plan and set it in motion. Sparow-Phillips further testified that, after being approached by Klapka regarding the plan, she contacted the Sheriff's Office and informed them of the plan to avoid further trouble. While Klapka testified that Sparow-Phillips approached her with the plan, in her confession Klapka stated that the plan was her idea alone and that she put the plan in motion by contacting Elsing.
 {¶ 31} Based upon this evidence, the trial court concluded that there was insufficient evidence to establish that Sparow-Phillips was an agent for the government at the time the plan was devised to submit the issue of entrapment to the jury. Reviewing the record, we find that the trial court did not abuse its discretion in so concluding and in refusing to instruct on the issue of entrapment. See State v. Risner (1997),120 Ohio App.3d 571, 574 ("if sufficient [evidence that would] permit reasonable minds to find [the existence of the affirmative defense] to be established," the issue should be submitted to the jury with a proper instruction); see, also, State v. Melchior
(1978), 56 Ohio St.2d 15, 21-22 (there was insufficient evidence to submit the issue of the affirmative defense to the jury where the defendant claims the existence of the affirmative defense, but the evidence indicates otherwise).
 {¶ 32} Moreover, in this case, Klapka filed a motion in limine prior to trial to exclude any evidence referring to any other "crime, wrongs or acts of the Defendant." The trial court granted Klapka's motion and, in doing so, prevented the state from proffering evidence that Klapka had previously attempted to smuggle heroin into a drug treatment facility. In essence, by precluding the state from proffering this evidence, Klapka's motion in limine forbid the state from offering evidence concerning Klapka's predisposition to commit the offense, which the state is entitled to offer in response to a defendant's claim of entrapment. See Doran, 5 Ohio St.3d at 192 (when a defendant asserts the defense of entrapment, the government is entitled to proffer evidence that the defendant is predisposed to committing the offense, including "the accused's previous involvement in criminal activity of the nature charged"). Thus, we agree with the trial court that "[i]n this case by virtue of granting the motion in limine, the issue related to [Klapka's] predisposition was precluded during the course of the trial and it would be highly unfair to the State to respond to the Defense without having been able to elicit evidence of predisposition." Based upon the above facts, we find that the trial court did not abuse its discretion in refusing to instruct on the entrapment defense.
 {¶ 33} Klapka's second assignment of error is without merit.
 {¶ 34} In her third assignment of error, Klapka argues that "the testimony of Ms. Klapka made more sense" than that of Sparow-Phillips. Klapka also argues that the state's case relies on the testimony of convicted felons and Klapka's coerced and inaccurate confession.
 {¶ 35} Although Klapka couches her third assignment as one involving a manifest weight claim, she asserts "that there exists insufficient evidence to support [Klapka's] conviction" and that the state failed to prove "each and every element beyond a reasonable doubt."[1] Thus, rather than review this claim as one of manifest weight, we will review it as one of sufficiency.
 {¶ 36} "When reviewing a claim of insufficient evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt. * * * The verdict will not be disturbed unless the appellate court finds that reasonable minds could not have reached the conclusion reached by the trier of fact. * * *" State v.Davie, 80 Ohio St.3d 311, 324, 1997-Ohio-341 (internal citations omitted). The weight to be given the evidence deduced at trial and the credibility of the witnesses is within the purview of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 37} The elements of complicity to the illegal conveyance of a drug of abuse onto the grounds of a detention facility are: (1) to solicit, to aid or abet, or to conspire with another, (2) to "knowingly convey, or attempt to convey," (3) "onto the grounds of a detention facility," and (4) "any drug of abuse." See R.C. 2923.03(A) and 2921.36(A)(2).
 {¶ 38} In this case, the state proffered evidence that the drug was, in fact, heroin, a drug of abuse. It is undisputed that the delivery of the drugs occurred at a detention facility, specifically the Lake County Jail. The state proffered extensive proof regarding Klapka's soliciting and conspiring with another to convey the heroin into the jail. Finally, the state offered evidence that Klapka did so with the requisite knowledge. Sparow-Phillips testified that Klapka initiated the plan to have the heroin mailed to her in a greeting card. Klapka admitted to her part in conspiring to have the heroin mailed to her at the jail in her non-coerced, voluntary confession. There was extensive evidence regarding the sting operation that resulted in Klapka's arrest. Finally, the state introduced evidence demonstrating that Klapka accepted the greeting card containing the heroin. Although Klapka denied conspiring with anyone to deliver the drugs to her in jail, viewing the above evidence in favor of the prosecution, we find that reasonable minds could conclude that Klapka was guilty. Thus, there was sufficient evidence of each element of the offense to support the jury's conviction.
 {¶ 39} Klapka's third assignment of error is without merit. Even if we reviewed this assignment of error under a manifest weight standard, we would still conclude that this assignment of error was without merit.
 {¶ 40} In her final assignment of error, Klapka argues that she did not receive a fair trial due to various instances of purported prosecutorial misconduct that occurred during opening and closing arguments. Klapka claims that the prosecutor, during his opening statement, "commented on his personal beliefs of the unsavory character of the accused and his own witnesses [and] vouched for the quality of the evidence by stating that this case had no doubt." Klapka also claims that, during closing argument, the prosecutor again vouched for the quality and importance of the evidence, argued things not in evidence, attempted to bolster the credibility of the state's witnesses, and shifted the burden of proof to the defendant to disprove the state's evidence.
{¶ 41} "The test for prosecutorial misconduct is whether theremarks are improper and, if so, whether they prejudiciallyaffected substantial rights of the accussed." State v. Lott(1990), 51 Ohio St.3d 160, 165 (citation omitted). "[T]he issueis whether but for the prosecutor's misconduct the verdict wouldhave been otherwise." State v. Johnson (1989),46 Ohio St.3d 96, 102.
 {¶ 42} We must be cognizant that "the prosecution * * * [has] wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom." State v.Stephens (1970), 24 Ohio St.2d 76, 82. The prosecution, however, cannot express personal opinions regarding the accused's guilt or allude to matters that are not supported by the evidence. Lott,51 Ohio St.3d at 166.
 {¶ 43} In regards to the prosecutor's statement in his opening that "there is not doubt in this case," the record demonstrates that the trial court sustained defense counsel's objection to this comment and that, as a result, the prosecutor re-stated that he "believe[d] the State [would] prove its case beyond a reasonable doubt." Based upon the trial court's action in sustaining Klapka' objection and the prosecutor's rephrasing of his statement, we do not find that this comment was "so prejudicial as to deny [Klapka] a fair trial." State v. Kamel
(1984), 12 Ohio St.3d 306, 313.
 {¶ 44} As to the prosecutor's remark referring to Klapka as a heroin user, we do not find this comment to be improper. Since the prosecution knew that evidence to this effect would be introduced, and, in fact, such evidence was introduced, including Klapka's own testimony, this statement was "no more than an objective summary of evidence which the prosecutor reasonably expected to produce." Frazier, 394 U.S. at 736.
 {¶ 45} Regarding the prosecution's other comments during opening statement, the trial court sustained objections to each of them and provided a curative instruction, instructing the jury to disregard the statement or admonishing the prosecutor to limit his comments to what evidence is going to be presented. Since the trial court provided such an instruction, "it is hard for us to imagine that the minds of the jurors would be so influenced by such incidental statements during this * * * trial that they would not appraise the evidence objectively and dispassionately."United States v. Socony-Vacuum Oil Co. (1940), 310 U.S. 150,239; see, also, Frazier, 394 U.S. at 735 ("We believe that in these circumstances the limiting instructions given were sufficient to protect the petitioner's constitutional rights.");State v. Butler, 10th Dist. No. 01AP-590, 2002-Ohio-1437, 2002 Ohio App. LEXIS 1423, at *14 (the defendant was not prejudiced by the prosecutor's comments during opening statements where the trial court sustained the objection and provided a curative instruction); State v. Mueller (July 9, 1997), 9th Dist. No. 2611-M, 1997 Ohio App. LEXIS 3045, at *5 (the prosecutor's opening statement did not prejudice the defendant where the trial court sustained defense counsel's objection and provided a curative instruction). We, therefore, cannot find that these comments denied Klapka a fair trial.
 {¶ 46} In regards to the prosecutor's statement during closing argument imploring the jurors to utilize their common sense, it is not uncommon for a trial court to instruct the jurors to utilize their common sense when examining the evidence, as the trial court did in this case. It would be incongruous to find that the same statement by the prosecutor is improper. Thus, we find that this statement was not improper.
 {¶ 47} Regarding the prosecutor's statement that Klapka claims shifted the burden of proof onto her to disprove the state's evidence, when taken in context, not only were the comments reasonable inferences from the evidence, they were the prosecutor's summation that he had proven his case beyond a reasonable doubt and that nothing the defense proffered could provide reasonable doubt. This statement did not shift the burden onto Klapka to disprove the prosecution's case. Thus, we find that these comments were not improper.
 {¶ 48} As to the remaining statements Klapka cites to in her brief that she claims were improper for purportedly bolstering the defense witnesses, we find that they were nothing more than ambiguous comments that reflected reasonable inferences that could be drawn from the evidence. Thus, since "[i]t is not improper to comment fairly on a witness' credibility based upon his or her in-court testimony," State v. Henderson (Sept. 29, 2000), 11th Dist. No. 99-T-0001, 2000 Ohio App. LEXIS 4579, at *11, citing State v. Keene, 81 Ohio St.3d 646, 666,1998-Ohio-342, we find that these statements were not improper.
 {¶ 49} "While some remarks arguably exceeded the bounds of propriety, they were not outcome-determinative, either individually or collectively," Davie, 80 Ohio St.3d at 330
(citation omitted), especially considering the trial court properly sustained objections to those statements that arguably exceeded those bounds and provided curative instructions at the time. Klapka's fourth assignment of error is without merit.
 {¶ 50} For the foregoing reasons, we hold that Klapka's assignments of error are without merit. The decision of the Lake County Court of Common Pleas is affirmed.
O'Neill, J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] It must be noted that this assignment of error only challenges the sufficiency of the evidence in regards to the charge of complicity to the illegal conveyance of a drug of abuse onto the grounds of a detention facility. Thus, we will restrict our review to the sufficiency of evidence as it pertains to this count.