OPINION
{¶ 1} The instant appeal emanates from a final judgment of the Geauga County Court of Common Pleas. Appellant, Dennis P. Quigley, seeks the reversal of his conviction on one count of rape under R.C. 2907.02(A)(1)(b). As the basis for his appeal, he submits that the trial court erred in allowing certain evidence to be considered by the jury during the course of his trial.
 {¶ 2} Appellant's conviction was predicated upon the following basic facts. During the first six months of 2002, appellant resided at two different locations in Geauga County, Ohio. At both locations, he lived primarily with his wife, Jennifer, to whom he had been married since October 1993, and with his eldest daughter, who had been born in July 1997. During this six-month time period, Jennifer gave birth to their second daughter, who then lived with the family at their second residence in Geauga County.
 {¶ 3} In June 2002, the Geauga County Board of Job and Family Services ("Geauga County Board") removed the two children from appellant's residence and took temporary custody of them on the grounds that they had been neglected and left unsupervised. Even though the Geauga County Board initially devised a case plan for reunifying the children with their parents, appellant and Jennifer were never able to satisfy the plan's requirements. As a result, the girls had to reside with two sets of foster parents over the ensuing fifteen months.
 {¶ 4} In October 2003, the second foster mother noticed that the eldest daughter was beginning to exhibit certain signs that she had been subjected to sexual abuse prior to her removal from her parent's custody. The foster mother conveyed this information to a social worker with the Geauga County Board, who decided to relay it to the Geauga County Sheriff's Department ("Sheriff's Office"). An investigation of the matter quickly ensued.
 {¶ 5} On November 19, 2003, appellant's wife was taken to the Sheriff's Office so that she could be interviewed by a department detective. During the interview, Jennifer told the detective that she had seen appellant engage in certain sexual conduct with their eldest daughter on at least two occasions prior to June 2002. She further informed the detective that, on one specific occasion, she had held the eldest daughter down while appellant attempted to have sexual intercourse with her. Although Jennifer tried at the conclusion of her interview to recant certain aspects of this statement, she was later indicted on one count of complicity in the commission of rape.
 {¶ 6} On the same date that Jennifer made her statement, appellant was picked up at his home by local police officers and transported to the Sheriff's Office. Appellant was then placed in an interrogation room in the basement of the building and interviewed by the same detective who had conducted Jennifer's interview. This new interview lasted for approximately two hours and was videotaped in its entirety. At the beginning of their discussion, appellant denied that he had abused the daughter in any manner. However, the detective then told appellant that Jennifer had already implicated him in the matter and that certain physical evidence had been found on the daughter. The detective also stated that the Geauga County Prosecutor might already have enough evidence against him to go to the grand jury, and that nobody would be able to assist him once the matter had reached that stage. After listening to the detective's various statements, appellant ultimately admitted that he had committed acts against his daughter.
 {¶ 7} Approximately one month after the foregoing interviews had occurred, the eldest daughter was examined by Lauren McAliley ("Nurse McAliley"), a pediatric nurse practitioner with a sexual abuse clinic at the Rainbow Babies and Children's Hospital in Cleveland, Ohio. As part of her examination, Nurse McAliley did not find any physical evidence that the girl had been raped. However, once she had considered certain statements the girl had made during the examination and other basic information gathered in the investigation, Nurse McAliley concluded that it was "probable" that the girl had been sexually abused.
 {¶ 8} In late December 2003, appellant was indicted on a single count of rape under R.C. 2907.02(A)(1)(b). Besides alleging that appellant had engaged in sexual conduct with a person who was not his wife, the indictment also stated that the victim had been younger than ten years old when the offense occurred. Finally, the indictment alleged that the offense had taken place at some point during the period between January 2002 and June 2002.
 {¶ 9} After entering a plea of not guilty to the sole count, appellant moved the trial court to suppress the confession he had made at the end of the November 2003 interview at the Sheriff's Office. As the grounds for this motion, appellant first asserted that the detective failed to obtain a proper waiver of his Miranda rights prior to the outset of the questioning. Appellant also contended that his statement had not been made voluntarily because the detective had exercised an undue influence over him.
 {¶ 10} An evidential hearing was held on the motion to suppress. At the beginning of the proceeding, the parties were able to submit certain stipulations of fact as to where and when the interview of appellant had taken place. The parties then submitted a copy of the videotape of the interview, and agreed that the trial court's determination on the suppression motion could be predicated solely upon a review of the tape.
 {¶ 11} In its separate judgment entry on this matter, the trial court expressly found that the detective had advised appellant of all of his Miranda rights prior to questioning him about the alleged rape. The court further found that appellant had understood his rights and had voluntarily waived them. In light of these findings, the trial court concluded that appellant's statement to the detective was admissible and, therefore, denied the motion to suppress.
 {¶ 12} After the state had indicated that it intended to call Nurse McAliley as an expert witness at trial, appellant also moved the trial court to exclude her proposed testimony. In support of this motion, appellant maintained that: (1) Nurse McAliley did not qualify as an expert witness; and (2) the methodology she had used in arriving at her opinion as to whether the victim had been the subject of abuse was unreliable.
 {¶ 13} The trial court conducted a separate "Daubert" hearing on the motion to exclude the expert testimony. During this proceeding, Nurse McAliley gave specific testimony concerning her qualifications to render an opinion as to the possibility that sexual abuse had taken place in this instance. She further testified as to the specific information she had reviewed in rendering her opinion about the victim in this matter. Upon hearing this testimony, the trial court rendered a new judgment in which it rejected both aspects of appellant's argument and denied his motion to exclude.
 {¶ 14} A three-day jury trial was conducted in late April 2004. The state presented the testimony of five witnesses, including appellant's wife, Jennifer, and Nurse McAliley. The state also introduced appellant's statement through the testimony of the detective who had conducted the interview. Appellant did not present any evidence in response to the state's case. Based upon the state's evidence, the jury returned a guilty verdict on the sole charge of rape.
 {¶ 15} After accepting the verdict and conducting a separate sentencing proceeding, the trial court imposed a life sentence on appellant and fined him the sum of $5,000. The trial court also found that appellant was a sexual predator.
 {¶ 16} In now appealing his conviction, appellant has assigned the following as error:
 {¶ 17} "[1.] The trial court erred in overruling [appellant's] motion to suppress.
 {¶ 18} "[2.] The trial court erred in permitting [Nurse] McAliley to testify as an expert witness."
 {¶ 19} Under his first assignment, appellant challenges the propriety of the trial court's decision on his motion to suppress. Specifically, appellant submits that the statements he made at the end of his interview with the detective should have been excluded from evidence because those statements were not made voluntarily in light of the manner in which he was questioned. In support of this argument, appellant contends that: (1) the detective did not take the needed steps to obtain a proper waiver of his Miranda rights; and (2) the detective made certain statements which were intended to confuse him and psychologically coerce him into confessing.
 {¶ 20} As an initial matter, this court would indicate that, pursuant to Miranda v. Arizona (1966), 384 U.S. 436, once a suspect has been taken into custody for questioning, the police officer has a duty to inform him that he has a right to remain silent, any statement he chooses to make can be used against him, he has the right to speak to an attorney, and counsel will be appointed for him if he cannot afford to pay for any legal services. However, if the police officer satisfies this obligation, the suspect can waive those rights and make incriminating statements without benefit of legal counsel. Id. If a defendant subsequently challenges the validity of the waiver of his rights, the burden of showing a proper waiver falls upon the state. State v. Nelson
(Sept. 24, 1999), 11th Dist. No. 97-L-108, 1999 Ohio App. LEXIS 4468.
 {¶ 21} In order for the requirements of Miranda to apply, though, the suspect must first be the subject of custodial interrogation. See Statev. Shaffer, 11th Dist. No. 2001-T-0036, 2003-Ohio-6701. In the instant case, our review of the videotape of the interview with appellant readily shows that the detective made statements which were intended to convince appellant that he was not in the "legal custody" of the Sheriff's Department at that time. For example, the detective told appellant at the very outset of the interview that he was not under arrest and was free to leave at any time. Furthermore, after the detective had informed appellant of the specific assertions made by Jennifer, appellant replied that he felt as if he was about to be arrested regardless of what he might say; in response, the detective again stated that appellant was not under arrest and had been read his rights merely as a matter of courtesy.
 {¶ 22} Notwithstanding the manner in which the detective chose to proceed, the state's response to the motion to suppress did not raise the question of whether appellant had been in police custody when the interview occurred. Instead, the state maintained that a proper waiver of the Miranda rights had taken place. Thus, our analysis of appellant's first assignment will likewise be based on the assumption that appellant was subject to custodial interrogation.
 {¶ 23} In relation to the manner in which a waiver of the Miranda rights must be made, the United States Supreme Court has stated:
 {¶ 24} "An express written or oral statement of waiver of the right to remain silent * * * is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the [Miranda] case. As was unequivocally said in [Miranda], mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated." North Carolina v. Butler (1979), 441 U.S. 369, 373.
 {¶ 25} As to the standard for determining whether a proper waiver took place, it has also been held that: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the `totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Moran v. Burbine (1986), 475 U.S. 412, 421.
 {¶ 26} Under the "waiver" segment of his first assignment, appellant's arguments focus upon the second prong of the foregoing standard. That is, appellant maintains that any waiver he might have made during the interview was not done knowingly because the detective tried to downplay the relative importance of his Miranda rights. In support of this contention, appellant points to some of the comments the detective made regarding those rights. For example, he emphasizes that, near the conclusion of the interview, the detective stated that the Miranda warnings had been given to him "as a courtesy."
 {¶ 27} After reviewing the entire videotape of the interview, this court would agree that the detective failed to place proper emphasis on the significance of the Miranda rights. This lack of emphasis can best be seen in the manner in which the detective informed appellant of his rights at the outset of the interview. The videotape shows that, although the detective gave a blanketed statement concerning all of the Miranda rights, he did not stop after stating each right and ask appellant if he understood that particular right. Instead, the detective did not inquire if appellant understood until he had completed the entire statement of the rights. Moreover, when appellant stated that he did understand all of his rights, the detective did not ask whether he wanted to waive them at that time, but immediately began to discuss the basic subject of the interview. By not seeking an express waiver of the rights, the detective was acting consistent with his prior statement that appellant was not under arrest.
 {¶ 28} By itself, appellant's response to the blanketed statement of his rights would not be sufficient to establish a knowing waiver. However, our review of the videotape also shows that other events occurred during the interview which demonstrate that appellant made a knowing decision to fully participate. For example, prior to giving the blanketed statement of the Miranda rights, the detective told appellant twice that he could speak to anyone he wanted at any point during their discussion. As part of the second separate statement, the detective said that appellant was free to leave at any time and "seek any advice you want to seek, talk to anybody you want to seek." When the detective then asked whether appellant understood the situation, appellant indicated that he did. This separate dialogue indicates that appellant was cognizant of his right to obtain advice as to the ramifications of his discussion with the detective.
 {¶ 29} In addition, as was previously noted in this opinion, during the latter stages of the interview, the detective stated to appellant that there might already be enough evidence against him to take the case to the grand jury. In response, appellant said that he felt as if he was about to be placed under arrest. To emphasize this point, appellant also referred to the fact that the detective had read him his rights at the very beginning of the interview. When considered in the context of the entire interview, appellant's reference establishes that he fully understood the implication of having had his rights read to him by the detective. Simply stated, even if the detective tried to downplay the importance of the Miranda warning, appellant was still fully cognizant of the warning's significance.
 {¶ 30} In contesting the legality of his confession under his first assignment, appellant has not raised an issue concerning whether he fully participated in the interview with the detective. As was noted above, a detainee's participation in the interrogation process can constitute a valid waiver when the underlying facts indicate that the detainee had a full understanding of his rights. Nelson, 1999 Ohio App. LEXIS 4468, at p. *13. Pursuant to the foregoing analysis, this court holds that appellant had such an understanding in this instance. Hence, the second requirement for a valid waiver of appellant's Miranda rights was met during the underlying interview.
 {¶ 31} As to the first requirement for a valid waiver, we would first note that our review of the videotape of the interview clearly shows that the detective did not try to coerce, intimidate, or force appellant to waive his Miranda rights. In addition, we would indicate that, although appellant has raised an issue as to whether his confession was generally a product of deception, he has not raised this point in regard to his implicit waiver of his rights. Accordingly, this court further holds that appellant acted voluntarily in engaging in a course of conduct which resulted in his confession.
 {¶ 32} Taken as a whole, the record before this court supports the trial court's holding that both requirements for a valid waiver of the Miranda rights took place as part of the interview with appellant. That is, the record demonstrates that appellant voluntarily and knowingly waived his rights prior to confessing to the underlying crime.
 {¶ 33} As a separate basis for his first assignment, appellant argues that his statement to the detective should have been suppressed because other facts supported a possible finding that his ultimate confession was not made voluntarily. In support of this distinct argument, appellant asserts that the detective engaged in improper behavior by making false statements to him, and by making statements which insinuated that he might have certain mental problems.
 {¶ 34} As a general proposition, a confession will be deemed voluntary when it stems from a free and unconstrained choice of its maker; on the other hand, a confession will be viewed as involuntary when it is caused by coercive police action. State v. Worley, 11th Dist. No. 2001-T-0048, 2002-Ohio-4516. In determining whether the confession stemmed from a free choice, a court must review the totality of the circumstances which led to the confession, including "`the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.'" Shaffer, supra, at ¶ 33, quoting State v. Edwards (1976), 49 Ohio St.2d 31, paragraph two of the syllabus. In other words, a confession should not be suppressed as involuntary unless the evidence establishes that the will of the accused was overborne and his ability to determine matters for himself was critically impaired. State v. Klapka, 11th Dist. No. 2003-L-044,2004-Ohio-2921.
 {¶ 35} In regard to the Edwards factors, the court would first note that, although there is no indication in the record that appellant had any prior criminal experience as an adult, the record does show that appellant was thirty-three years old at the time of this event and was a high school graduate; thus, appellant was capable of fully understanding the effect of making a confession. Second, the record demonstrates that the questioning of appellant only lasted a little over two hours, and that he was given breaks during that time period. Third, our review of the videotape indicates that appellant was not made subject to any physical mistreatment.
 {¶ 36} In relation to the environment in which the interview occurred, appellant places a heavy emphasis on the fact that his discussion with the detective was conducted in the basement interrogation room, that the door to the room was closed the entire time, and that there was no neutral person present. According to appellant, these facts should be viewed as indications that his confession was not voluntary. However, such facts only show that appellant was not free to leave and was the subject of custodial interrogation by the detective. Since a voluntary confession can obviously be given during custodial interrogation, the facts cited by appellant are not entitled to any weight in determining whether the confession was admissible.
 {¶ 37} As to the fourth factor, appellant asserts that his confession was induced in part by a false statement the detective made concerning physical evidence of the rape found on the victim. This court has previously stated that the use of deceit can be an indicator that a confession had not been made voluntarily. See Klapka, supra,2004-Ohio-2921. However, in this instance, the videotape shows that the detective did not place great emphasis on the alleged physical evidence; instead, the detective focused upon the statements made by Jennifer during her prior interrogation. Thus, the trial record before us does not support the conclusion that the detective's use of false statements was a decisive factor leading to the confession. To this extent, the use of deceit did not alter the voluntary nature of appellant's ultimate statements.
 {¶ 38} Appellant further states that the detective made improper statements concerning whether he was experiencing mental problems. In support of this argument, he refers to the fact that the detective told him during the course of the interview that he might be suppressing the memory of the rape or that he might have a split-personality.
 {¶ 39} As to this point, this court would note that, as the detective continued to refer to the statement given by Jennifer, appellant began to say that he could not simply recall ever touching the victim. In response, the detective tried to give possible explanations for this, such as the possibility that appellant could be subconsciously suppressing any memory of his actions. In doing so, the detective was clearly using the explanations as a means of requiring appellant to consider the ramifications of his statements further. As a result, this court concludes that this line of questioning did not constitute an improper inducement which would render the confession invalid.
 {¶ 40} Finally, appellant submits that his confession was made involuntarily because the detective promised him "help" if he would admit that he had engaged in improper sexual behavior with the victim. As to this point, our review of the videotape shows that when the detective made these types of statements during the interview, he was not trying to convince appellant that the prosecutor might treat him in a more lenient manner if he confessed. Instead, the detective was indicating that appellant would be given help for any sexual or emotional problem he had. In light of the nature of this promise and the general context in which it was made, we conclude that the detective did not engage in coercive police behavior by making the promises. See State v. Fille, 12th Dist. No. CA2001-08-066, 2002-Ohio-3879.
 {¶ 41} Taken as a whole, the record in the instant appeal supports the conclusion that appellant's confession was not the product of overreaching by the detective. Therefore, because the trial court did not err in overruling appellant's motion to suppress the oral confession in this case, his first assignment of error lacks merit.
 {¶ 42} Under his next assignment, appellant submits that the trial court's analysis as to the admissibility of Nurse McAliley's testimony was erroneous. First, he contends that Nurse McAliley should not have been permitted to testify because she did not have the qualifications to "diagnose" whether the victim had been sexually abused. Second, he maintains that, even if Nurse McAliley did qualify as an expert witness, her testimony still should have been excluded because her opinion was based upon information that was not presented to the jury at trial.
 {¶ 43} In regard to appellant's "qualification" argument, we would begin our analysis by noting that, in order to be designated as an expert, a witness must be able to satisfy the three basic requirements of Evid. R. 702. See Casterline v. Khoury, 11th Dist. No. 2002-T-0157,2003-Ohio-6680. The rule states that a witness can testify as an expert when: (1) the proposed testimony pertains to subject matters of which a lay person would not have knowledge; (2) the witness has specialized knowledge, training, or education on the subject matter; and (3) the proposed testimony is based upon a reliable scientific or technical information.
 {¶ 44} In the instant case, a review of Nurse McAliley's testimony during the hearing on appellant's motion to exclude shows that she was able to meet all three requirements of Evid. R. 702. First, Nurse McAliley's testimony pertained to whether the underlying facts supported the conclusion that the victim had been sexually abused; therefore, her testimony would assist a lay person in understanding an obscure topic. Second, she indicated that she had received special training not only to be a pediatric nurse practitioner, but also to conduct physical examinations for sexual abuse. In addition, Nurse McAliley stated that she had conducted more than the nine hundred examinations for sexual abuse in minor children. Third, as to the method she used for determining abuse, she testified that she followed a procedure which has been accepted nationwide. This method not only calls for the physical examination of the child, but also consideration of information gathered by investigators.
 {¶ 45} Appellant maintains that, despite her training and general knowledge of abuse, Nurse McAliley did not qualify as an expert because she is not a doctor. In support of this specific argument, appellant states that, as part of her testimony, Nurse McAliley "admitted" that she did not have the ability to render medical opinions.
 {¶ 46} After reviewing Nurse McAliley's entire testimony, this court concludes that appellant has mischaracterized her statements as to the extent of her ability to diagnose certain medical conditions. Specifically, we would note that Nurse McAliley did indicate that she was not generally qualified to make a final diagnosis as to complex conditions such as heart disease or cancer. However, her testimony clearly manifested that this limitation did not extend to her ability to determine whether child abuse had occurred in a given case. In fact, Nurse McAliley emphasized that her specialty was in child protection and child abuse.
 {¶ 47} Even if Nurse McAliley did not have a doctorate of medicine, she still had a specialized knowledge and training which would be beneficial to a lay person. As a result, the fact that she was not a doctor would only go to the weight to be given to her testimony. To this extent, the trial court did not err in holding that Nurse McAliley was qualified to testify as an expert witness.
 {¶ 48} As to the information upon which Nurse McAliley based her "abuse" opinion, our review of the hearing transcript shows that she relied upon the following items: (1) her own physical examination of the victim; (2) statements the victim had made directly to her concerning the sexual abuse; (3) information about appellant's confession; (4) the victim's behavioral history, as provided by the second foster mother; and (5) certain disclosures from the county social worker concerning the case. Appellant argues that the foregoing was not a proper factual basis for Nurse McAliley's opinion.
 {¶ 49} The outcome of this specific issue is governed by Evid. R. 703, which provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." In applying this rule, this court has recognized that complete compliance with the rule is not needed in order for the expert's opinion to be admissible; instead, the jury can hear the opinion when a "major part" of the underlying facts were either perceived by the witness or admitted into evidence. See In re Stillman,155 Ohio App.3d 333, 2003-Ohio-6228.
 {¶ 50} In this case, our review of the entire record verifies that the first two items cited by Nurse McAliley were perceived directly by her. Furthermore, evidence as to the last three items was admitted into evidence at trial. In regard to the third item, the victim's behavioral history, our review of the trial transcript indicates that the testimony of the second foster mother only contained a limited reference to this topic. That is, although the second foster mother was not allowed to testify as to statements the victim had made to her, her testimony did refer to two types of behavior the victim exhibited while in her care. Nevertheless, the paucity of the foster mother's testimony does not undermine the fact that the majority of the information supporting Nurse McAliley's opinion was compliant with the requirements of Evid. R. 703. Under such circumstances, the trial court did not err in allowing her to testify at trial.
 {¶ 51} Pursuant to the foregoing analysis, appellant's second assignment also is lacking in merit.
 {¶ 52} Since appellant has failed to establish any prejudicial error in the underlying proceedings, the judgment of the Geauga County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.